## EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. MacKIRGAN. *
### No. 8195.

Circuit Court of Appeals, Fifth Circuit.
Nov. 10, 1936.

Robert S. Sams, of Atlanta, Ga., for appellant.

Eugene M. Mitchell and B. L. Milling, both of Atlanta, Ga., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Mrs. Laura Kear MacKirgan, as beneficiary of her husband's life insurance policy for $10,000 issued by the Equitable Life Assurance Society, recovered judgment for the insurance less a loan against the policy. The errors assigned on this appeal are a refusal to direct the verdict for the defendant, and two refusals to charge as requested and two charges otherwise. The pleadings admit that the insured failed to pay the quarterly premium which was payable February 2, 1932, that he made no claim of disability under the

*Rehearing denied Dec. 17, 1936.

provisions of the policy relating thereto until January 25, 1933, that the company declined to recognize this claim, that the insured then brought a suit for disability benefits which was pending when he died January 30, 1934, and is yet undetermined. Mrs. MacKirgan's claim as beneficiary of the life insurance was declined. Her petition sets up that the insured became totally disabled and presumptively permanently so under the terms of the policy by January 15, 1932, before the premium payable February 2 was due, and in consequence the policy did not lapse for nonpayment of that premium but was in force at the insured's death. The issue of fact is when such disability began. The questions of law are at what date the disability must have existed under a proper construction of the policy in order to prevent a lapse, and whether working at the expense of health and under necessity when really unable necessarily defeats a claim of disability. The defendant requested the judge to charge that total disability must be proven to have existed thirty days before February 2, 1932, when the premium was payable, and he charged instead that the critical date was the expiration of the grace of thirty-one days thereafter; and defendant requested him to charge that no matter what the insured's physical and mental condition was, if he continued in any occupation or to perform any work for compensation of financial value he was not totally disabled under the policy, but the judge charged instead: "Such disability means one 'which prevents the insured from engaging in any occupation or performing any work for compensation of financial value' and it must be total as distinguished from partial disability. Of course the work must be substantial and not trivial, amount to a job, an occupation, and a disability under this policy does not necessarily imply an incapacity to do any work at all, or that the person must be bedridden, or that he must work where to do so would shorten his life or seriously impair his health; and the fact that he did do some work because forced thereto by absolute necessity when he was really not able to work would not change a total disability to a partial one. The fact that one has done some work just before or after the alleged lapse of his policy is not of itself sufficient to defeat his claim of total and permanent disability. He may have worked when really unable and at the risk of endangering his life or health."

On the question of disability the evidence very briefly stated tended to show that the insured began to have severe pains in his back and head in the spring of 1931 which steadily grew worse. Although he certified to the insurance company in October that he was in good health in order to have some change made in his policy, by December he was unable to sleep much at night or even to remain lying in bed or to sit up to play cards; he had lost flesh and become very irritable, his spine had become greatly curved and his chest sunken, he suffered constant pain thought to be arthritis, could hardly get in or out of an automobile or walk. Nevertheless he continued in January and February, 1932, to have his daughter drive him around in an effort to get orders for printing, which was his business, on which he received commissions. During January and February he is shown to have thus earned commissions of about $5 on each of five orders, and in February, May, July, and October to have gotten four orders from a medical inspector for this appellant on which he received commissions, besides some other orders mostly from Yaarab Temple of the Shriners, of which he was a member. There was, however, evidence from which the jury could conclude that these were all due more to friendship and to pity for the insured than to any effort he put forth. He drove a car to Florida during the summer, but there is testimony that he was in a very bad condition in Florida. He became bedridden in October, 1932. He exercised no options about his policy after failing to pay the premium payable February 2, 1932. In January, 1933, he claimed disability benefits beginning January 15, 1932. He died in January of 1934, and on a post mortem examination it was found that he had tuberculosis of lungs, liver, spine, and brain, and calcium protuberances had formed on the vertebræ of his spine. A physician testified that this last was no doubt his trouble all along, and would cause great pain, and that he thought insured's undertaking to work substantially affected his health and tended to shorten his life, and that he should have been in some institution at rest instead of going about.

The policy provisions here applicable, descriptive of the total and permanent disability which comes within it, are these: "For the purposes of this policy (A) disability is total when it prevents the insured from engaging in any occupation or per-

forming any work for compensation of financial value, and (B) total disability **is** presumably permanent only under the circumstances and from the date (herein called the effective date) as follows: (1) * * * (2) When it has existed continuously for three months—then from the date of the completion of one month of such continuous total disability." From the evidence recited it is plain that MacKirgan's disability did become total, and that it was continuous for more than three months and until his death, so that a presumption of permanency arose dating back to thirty days after it first became total. The question is: At what stage is the disability to be considered as having become total? The insurer says only when the insured is positively and literally *prevented* from doing *any* work for compensation of financial value, and that this came about first in October, 1932. The judge charged those words of the policy, but explained and qualified them as above quoted. In doing so he apparently followed expressions of this court in the case of Metropolitan Life Insurance Company v. Foster, 67 F. (2d) 264, where the policy definition of total disability was quite like that now before us though the disablement was of a different sort. The policies which have come before the courts have used varying terms, such as "disabled from," "unable to," or, as here, "prevented from" working. They are all capable of a rigid literal construction so as to exclude from the benefit of the insurance cases where any work is done even though very slight and at the expense of health or under pain so great that work ought not to be expected of the sufferer. But the weight of authority is that the terms are not intended in that rigid sense, and that one whose work is only trivial or is done under the pressure of necessity and at the expense of health or great pain is disabled or unable or prevented from working within the real meaning of the insurance. Cf. United States v. Martin (C.C.A.) 54 F.(2d) 554. We adhere to this view, which was expressed in the Foster Case, supra, after examination of the collections of the cases there referred to. In Georgia, where this contract was made, total disability provisions are construed with great liberality. Prudential Ins. Co. v. South, 179 Ga. 653, 177 S.E. 499, 98 A.L.R. 781. We accordingly find no error in the charge refused or in that given as applied to the evidence in this case.

But a correct fixing of the date is required at which total and presumably permanent disability must be found by the jury to have occurred. Under the charge requested on this point the disability must have been total for thirty days before February 2, 1932, the day the unpaid premium was payable. Under the charge given it was enough to save the insurance if it had existed for thirty days before the additional grace period of 30-one days expired. Stated otherwise, the question is whether the life insurance under this policy will be saved by a total and presumptively permanent disability occurring in the grace period, as it would be if it had occurred before the unpaid premium became payable. The policy must give answer, there being no controlling statute, and the parties free to contract as they please. The face of the policy promises to pay the beneficiary $10,000 on due proof of the death of the insured, provided premiums have been paid and the policy is in force; to increase that amount to $20,000 if the death is from accident as defined in the policy; "and further if the insured before age sixty becomes totally and presumably permanently disabled as defined in the total and permanent disability provision on the fourth page hereof the Society will, subject to the conditions of such provision, *waive subsequent premiums and pay* * to the insured a disability income of $100 a month." "This insurance is granted in consideration of the payment in advance to the Society of One Hundred and Thirty-Four and 20/100 Dollars, and of the payment quarterly thereafter of a like sum *upon each second day of May, August, November and February * * *.*" The definitions of total and presumably permanent disability above quoted from the fourth page of the policy are followed by this: "Upon due proof before the expiration of *one year after default in the payment of premium* or, if there be no default, not later than one year from the maturity of this policy, that the insured *while the policy was in force* became totally and presumably permanently disabled as above defined due to bodily injury or disease * * * the Society will (a) waive payment of *all premiums falling due* upon this policy after the effective date of such disability and during its continuance and (b) pay to the

*All italics are ours.*

insured a monthly disability income, etc., (Note: *Any premium so waived* and any disability income so paid shall not be deducted from any amount payable in any settlement of this policy)." The policy further provides as to premiums and defaults: "All premiums are payable in advance at the Home Office * * *." "Grace. A grace of thirty-one days will be granted for the payment of every premium after the first, during which period *the insurance hereunder shall continue in force. No interest* will be charged upon premiums paid during the days of grace. If death occur within the days of grace the *premium then due and unpaid* shall be deducted from the amount payable hereunder." "Failure to pay any premium on or before the day on which it *falls due* shall constitute a default hereunder. Upon default this policy shall lapse and the *insurance herein cease* except as stated in the provisions entitled Grace, and Options on Surrender or Lapse * * *."

■ We are of the opinion that the policy, though providing for three benefits on diverse contingencies, is a single contract for a single premium. There is a statement that $3.80 is included for the double indemnity and $12 for the disability benefit, and that on any anniversary of the policy either or both of these insurances may be discontinued by returning the policy for proper indorsement, but such a change was never made. If the whole premium of $134.80 be not paid, the whole policy lapses together. "The insurance herein shall cease" means all of it. The natural meaning of the provision that "failure to pay any premium on or before the day on which it falls due shall constitute a default" is that a default occurred February 2, 1932, in this case. This meaning of the word "due" is supported by the preceding paragraph, "If death occur within the days of grace the premium *then due* and unpaid shall be deducted," where it evidently applies to the beginning of the grace period and not to its end. Compare Bankers' Life Co. v. Burns (C.C.A.) 30 F.(2d) 327; Joyner v. Jefferson Standard Life Ins. Co. (C.C.A.) 53 F.(2d) 745. According to this interpretation, the whole premium became in default February 2, 1932, and the entire insurance lapsed "except as stated in the provisions entitled Grace, etc." But the provision entitled "Grace" declares that for thirty-one days, notwithstanding the default, "the insurance hereunder shall continue in force." Again all of it is meant. The effect of the grace provision is that a credit of thirty-one days is available for paying the premium and for doing away with the tentative lapse of the policy, no interest even being chargeable on the premium. During this period of suspense if death occurs the death insurance and the double indemnity being in force are collectible, and by express agreement the overdue premium is to be paid out of the insurance. It is equally plain that if the disability insured against occurs during the grace period the disability income becomes collectible; and by the parenthetical note above quoted the "premiums waived" are not to be deducted. If the overdue premium on which grace was running when the disability occurred is not within the provision for waiving premiums, it would of course not be waived, but it would be, without any express provision to that effect, a good offset against what the Society owed. The nonwaiver of that premium would not be construed to defeat the disability insurance plainly continued in force by the grace provision. Ætna Life Ins. Co. v. Palmer, 159 Ga. 371, 125 S.E. 829.

■■ Would then the life insurance also continue beyond the grace period, the disability persisting? We think so. The waiver of premiums on disability as promised in the face of the policy is of "subsequent premiums," and on the fourth page is of "all premiums falling due upon this policy after the effective date of such disability and during its continuance." All premiums after that of February 2, 1932, are clearly waived. It is said that that payable February 2, 1932, "fell due" on that date rather than at the end of its grace period and is not waived because of a disability occurring during the grace period. Looking to the unity of the policy and its broad purpose that disability shall both cause an income and preserve without premium payment the life insurance, we think that it was intended that if a disability occurred during the grace and while the policy was in force the insured was to be relieved of the pending and the future premiums during disability; for that one on which grace has not expired nor interest is running is not absolutely due. Thus it was held in Minnesota Life Ins. Co. v. Marshall (C.C.A.) 29 F.(2d) 977, under circumstances and on a waiver agreement substantially like those before us. See,

also, Life Ins. Co. of Virginia v. Williams, 48 Ga.App. 10, 16, 172 S.E. 101. But even if not waived, the premium ought to be considered as paid and to be charged by the Society against the disability payments owed by it. In either view the life insurance persists along with the unlapsed disability benefits of the same policy. The District Judge was therefore right in charging the jury as he did.

■ The evidence made a jury issue as to the occurrence of total and presumably permanent disability before the expiration of the grace period, and their finding is conclusive.

The judgment is affirmed.