## METROPOLITAN LIFE INS. CO. v. BOVELLO.

(Court of Appeals of District of Columbia. Submitted March 3, 1926. Decided May 3, 1926.)

No. 4354.

1. **Insurance ⟨⟩524—Insured, to recover as for total disability, need only show inability in exercise of ordinary care to do material acts necessary to performance of duties of his occupations.**

To recover as for total disability, under policy requiring disability to perform any duty of occupation, insured need only show that he was, by reason of disease or sickness, directly and independently of other causes, unable, in the exercise of ordinary care and prudence, to transact or perform the substantial and material acts necessary to the performance of the duties of his occupations.

2. **Insurance ⟨⟩668(13)—Evidence held sufficient to go to jury on question of insured's right to recover as for total disability.**

Evidence that insured, a notary, musician, and ticket broker, took only an occasional acknowledgment, and was unable to play, *held* sufficient to go to jury on question of insured's right to recover as for total disability.

3. **Insurance ⟨⟩524—Right to recover as for total disability should not be prejudiced by acts of insured not done in exercise of common care.**

If things done by insured during period of alleged total disability were not done in the exercise of common care and prudence, his right to recover as for total disability should not be prejudiced thereby.

4. **Insurance ⟨⟩669(2)—Total disability clause of policy held not so insusceptible of two constructions as to render erroneous giving of instruction to adopt construction most favorable to insured.**

Policy providing indemnity, if disease or sickness should "wholly disable and prevent insured from performing any and every kind of duty pertaining to his occupation," *held* not so insusceptible of two constructions as to render erroneous giving of instruction that, where two constructions were possible, one most favorable to insured should be accepted.

5. **Trial ⟨⟩296(2)—Instructions defining total disability held not erroneous, in view of other instructions.**

Instructions defining total disability *held* not erroneous, nor omission therefrom of requirement that insured be continuously treated by physician fatal; such matter being supplied by another instruction given.

6. **Insurance ⟨⟩549—That insured went to Italy during total disability held not to preclude recovery, as depriving insurer of right to examine him.**

That insured during period of total disability went to Italy for his health *held* not to preclude recovery on ground that it deprived insurer of right and opportunity to examine insured, which was reserved in policy.

In Error to the Municipal Court of the District of Columbia.

Action by John B. Bovello against the Metropolitan Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

B. S. Minor, H. P. Gatley, H. B. Rowland, and A. P. Drury, all of Washington, D. C., for plaintiff in error.

Milton Strasburger, of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

BARBER, Acting Associate Justice. This is a review by writ of error of a judgment of the municipal court of the District of Columbia in favor of Bovello, plaintiff below, against the Metropolitan Life Insurance Company, the defendant. The same parties will be respectively referred to as plaintiff and defendant in this opinion.

May 2, 1923, defendant issued to plaintiff a certain policy of insurance, whereby it insured plaintiff for a term of six months from said date against the results of disease or sickness contracted while the policy was in force. In case of total disability, as described in the contract, the weekly indemnity payable thereunder for the period of such total disability, not exceeding 52 weeks, was $25.

Claiming to be entitled to the indemnity for total disability, the plaintiff about September 23, 1923, made claim under his policy therefor, and was paid the same by defendant to May 16, 1924, in 34 payments, of $25 each. Defendant then refused to make any further payments, and plaintiff later brought this suit for the balance of $450 of the total disability indemnity. In the court below plaintiff had judgment on the verdict of the jury for the amount so claimed.

The clause of the policy upon which plaintiff's right of recovery rests is as follows:

Clause 9: "If such disease or sickness, directly and independently of all other causes and while this insurance is in force, shall continuously and wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation and shall require and receive the continuous care and treatment of a legally authorized physician, the company will pay the weekly indemnity for the period of such total disability, not exceeding 52 weeks."

In connection therewith it is necessary to

consider the following questions propounded to plaintiff, and his answers thereto embraced in ·the application for the policy, which questions and answers were in terms made a part of the insurance contract.

"What is your occupation? (If more than one, state them all.) Steamship ticket agent, notary public, and musician.

"State in full the duties of your occupation? Selling tickets and furnishing music."

The important question here is: What meaning shall be given to the expression, "shall continuously and wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation," found in clause 9 of the contract; it being assumed in that connection that plaintiff had three occupations—steamship ticket agent, notary public, and musician?

The defendant contends that the above-quoted language must be construed literally, and held to mean that the plaintiff must be continuously—that is, "without interruption, without cessation or intermission, or without intervening space or time"—*wholly disabled* from performing *any* and *every kind* of *duty* pertaining to each of his three named occupations, and that if, at any time during the indemnity period of 52 weeks, he was able to or did perform any act which was a duty to be ·performed in any of said occupations, his right of recovery is thereby defeated. As the determination of this issue, before considering any specific error relied upon by defendant, will tend to simplify the discussion, we proceed to consider the same.

The above statement of defendant's claim, which, no doubt, is in accord with the literal meaning of the language employed, suggests at once the reason why the courts have refused to enforce such or similar contracts in their literal meaning, but· rather have given them what is called a reasonable construction, in view of the purpose for which they were made. The construction claimed by defendant, carried to its logical conclusion, would result that, if the plaintiff were, during the indemnity period, for the space or time of one-half hour, or even less, able to play the clarinet (the instrument used by him as a musician), take one notarial acknowledgment, or transact the business of selling one steamship ticket, the defendant would be released from all subsequent liability, regardless of 'the fact that plaintiff was for the remainder of the period totally disabled mentally and physically from again performing any of the acts last above mentioned. The same result would follow if plaintiff ceased to require and receive the continuous care of a legally

authorized physician, although in fairness it may be said that defendant does not insist that the provision for such care must receive such literal application.

[1] While there is not an entire harmony of views as to the interpretation to be given to contracts substantially like or much similar to the one here, yet we are satisfied the weight of authority is that it was only incumbent upon the plaintiff to show by the fair balance of testimony that he was, by reason of disease or sickness, directly and independently of all other causes, unable, in the exercise of ordinary or common care and prudence, to transact or perform the substantial and material acts necessary to the performance of the duties of each and all of his occupations.

In Cooley's Briefs on the Law of Insurance, vol. 4, p. 3290 et seq., the rule of construction referring to total disability provisions is stated as follows: " * * * And where the policy insures against· injuries 'wholly or continuously disabling him from transacting any and every kind of business pertaining to his occupation of merchant,' it is not necessary, to constitute total disability, that an injury should render the insured physically unable to transact any kind of business pertaining to his occupation, but it is sufficient if the injury is such that common care and prudence require him to desist from transacting such business in order to effect a cure."

In the same connection, the same author, speaking of provisions substantially identical with those of clause 9 of the policy here, says: "On the contrary, the weight of authority supports the rule that, even under the clause providing for indemnity for disability preventing insured from prosecuting any and every kind of business pertaining to his occupation, it is sufficient if insured is disabled from performing the substantial and material acts connected with such occupation."

The following are among the many authorities which may be referred to on the subject: Joyce on Insurance, vol. 5, pp. 5218, 5219; Ruling Case Law, vol. 14, p. 1316; Young v. Travelers' Ins. Co., 80 Me. 244, 13 A. 896; Lobdill v. Laboring Men's Mut. Aid Ass'n, 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537, 65 Am. St. Rep. 542; Thayer v. Standard Life & Acc. Ins. Co., 68 N. H. 577, 41 A. 182; Workingmen's Mut. Protective Ass'n v. Roos, 63 Ind. App. 18, 113 N. E. 760; Clarke v. Travelers' Ins. Co., 94 Vt. 383, 111 A. 449; Ætna Life Ins. Co. v. McCullagh (June 1922) 195 Ky. 136, 241 S. W. 836.

[2] The testimony introduced on behalf· of the plaintiff below tends to show that, prior

to the time he made the claim for indemnity, he was a musician, played a clarinet at the Hotel Burlington, for which his weekly salary was $18; that he furnished music for private entertainments, such as dances, etc., and directed orchestras; that he received, when his orchestra played, $1 for each man each time he played; that he solicited people to buy steamship tickets, which the company would afterward send him, and which he would deliver; that he received a commission of 5 per cent. thereon, but the extent of that business does not appear; that he had been notary public for about 20 years, his duties in that connection being to affix his signature and seal; that he was appointed notary "for the purpose of the Italian immigrants"; that after December, 1923, the Immigration Law changed; that he first consulted his physician, Dr. Mistretta, about September 18, 1923, at which time the doctor found he had a very high blood pressure, about 230, while the normal should be about 140 or 150; that such abnormal pressure indicated a disease of the arterial system, sometimes of the kidneys, and an abnormal heart; that the doctor then prescribed absolute mental and physical rest, diet, and medicine; that he saw the plaintiff repeatedly, nearly every day, until he went to Italy, June 17, 1924, which trip was taken pursuant to the doctor's advice; that, before taking this trip, plaintiff's physical condition did not respond to treatment; that immediately following his first interview with Dr. Mistretta he abandoned all the foregoing business, except that of notary public, and did not resume any part thereof until November 1, 1924; that in March, 1924, he was examined by two other physicians, at least one of whom told him he would have to take it easy and follow Dr. Mistretta's instructions; that March 27, 1924, another physician, Dr. Birdsall, examined him and found he had high blood pressure, Bright's disease, and was very nervous; that he was of opinion the high blood pressure was caused by arteriosclerosis, a permanent disease; that he also advised plaintiff to go to a warmer climate, stop all work temporarily, and get a rest; that mental or nervous strain was worse than physical work; that in October, 1923, and in March, 1924, Dr. Schneider, representing defendant, examined the plaintiff; that his blood pressure on the first occasion was above 200, the limit his machine would then register; that his normal blood pressure should be about 120; that his tonsils were hypertrophic and inflamed; that he reported this to defendant; that on his second exam-

ination he did not see any improvement in the plaintiff's condition; that in one of his reports to defendant he stated plaintiff was able to go around, but not to work; that, had he known plaintiff was a notary, he would not have reported that he could not work, so far as that office was concerned.

Plaintiff's testimony also tended to show that for about two months after he first consulted Dr. Mistretta he was in bed, after which he sat up for a few hours a day for about a month, then walked around the block each day for about another month; that before he sailed for Italy he frequently went to the Hotel Burlington, where he would stay from 10 minutes to half an hour; that in March he tried to play there, but felt so badly he had to stop; that when he arrived in Italy he went to his home town, immediately consulted a physician, was under his care almost every day, and that he did not work while there; that he returned to this country about September 25th, not fully recovered in health, went straight to Dr. Mistretta, and continued with him about a month.

On plaintiff's cross-examination, he was shown a copy of his report to the Department of Justice relating to notarial business performed by him in November and December, 1923, and January, 1924, which he admitted to be true. This report showed that he took about 16 notarial acknowledgments during the time, and apparently, in that connection, did some other work relating to Italian matters, his charges therefor, including his notarial acknowledgments, amounting to $49.85, of which he received about $15. He testified that, so far as he recollected, he did all of the notarial work that came to him before he went to Italy, but what, if any, that was after January 31st does not appear; that, when he took some acknowledgments, he put on his seal and attached his signature without getting out of bed.

Dr. Mistretta, on cross-examination, expressed the opinion that taking an acknowledgment as often as once or twice a day would not, in view of plaintiff's condition, be advisable, and Dr. Birdsall, when asked if he thought plaintiff was able to act as musician, ticket broker, and notary public, said that he might have been able to do that for a while, but he thought it was simply aggravating the trouble and would make his condition worse. There was other testimony tending to corroborate the plaintiff's in various respects.

At the close of plaintiff's evidence, defendant, on its behalf, called Dr. Schneider, who said that in his opinion plaintiff's condi-

tion at the time he made his examination was such that he could perform the duties of notary public or selling tickets.

Both parties then rested, and defendant moved for an instructed verdict in its favor. The motion was denied, subject to defendant's exception. In the argument here the issue thereby raised is stated by defendant as follows: "May a person, insured in a threefold occupation, recover under a policy of insurance providing for total and partial disability, where it is shown that he was not disabled from performing duties incident to one of these occupations?"

Defendant's argument then proceeds upon the theory that, unless there was a total continuous disability, within the *literal* meaning of the contract, in each of his three occupations, plaintiff was not entitled to recover, claiming that the evidence in this case establishes there was no such disability.

In view of the rule of interpretation hereinbefore set forth, we are clear that plaintiff was entitled to go to the jury on the question of whether or not there was such a total continuous disability for the indemnity period as provided for in the contract, *when properly construed.*

[3] The fact that plaintiff performed the duties of notary public, as shown by the evidence, must be considered in connection with the further testimony that it was not in accordance with the advice of his physicians, and that, so long as it was continued, his disabled condition but little improved. It was for the jury to say whether or not what work he did in that respect ought not, in the exercise of common care and prudence, to have been done. If they found it was not the exercise of common care and prudence on his part to do the work which he did, he should not be prejudiced by the fact that he did it.

Following the denial of defendant's motion, the plaintiff submitted the three following requests, which were complied with, subject to defendant's exceptions:

(1) "The jury are instructed that, where a policy of insurance is so drawn as to require interpretation and to be fairly susceptible of two different constructions, the one will be accepted that is most favorable to the insured."

(2) " 'Total disability,' contemplated by the insurance policy, means an inability to perform all the duties necessary to the practical prosecution of the vocation or business of the insured in substantially his customary and usual manner, disregarding all trivial acts, which are not material to the prosecu-

tion thereof, but which are merely incidental thereto."

(3) "The jury are instructed that the term 'total disability' is a relative matter, and must depend chiefly on the peculiar circumstances of each action. It must depend largely upon the occupation and employment, and, the capabilities of the person injured. The, total disability contemplated by the insurance policy does not mean, as its literal construction would require, a state of absolute helplessness, which can result only from loss of reason, since as long as one is in full possession of these mental faculties he is capable of transacting some of his business, whatever it may be, although he is incapable of physical action."

[4] Defendant insists that these instructions were erroneous, contending that the first one, while true as an abstract proposition of law, should not have been given, because there was no evidence that the policy did require interpretation, or that it was susceptible of two constructions, relying much upon the authority of Insurance Co. v. Seaver, 86 U. S. (19 Wall.) 531, 22 L. Ed. 155. In that case the court said, with reference to an insurance policy, that certain language therein was to be construed by the court, so far as it involved matters of law, and by the jury aided by the court when it involved law and fact, and held in that connection that it was error to charge the jury that, in determining the interpretation to be given the contract, it was proper to consider how ordinary people in the part of the country where the insured resided would naturally understand the language employed.

Here no such question is presented. The case is, however, authority for the view that the jury, aided by the court, when the question involved is one of law and fact, may determine the meaning of the contract itself. As we have already pointed out, the meaning of clause 9 was under consideration, and was to be determined in view of the purposes for which the contract was entered into and the facts disclosed by the evidence.

[5] As to the two other requests of plaintiff, we think they are within the rule of construction given by Cooley and the other authorities hereinbefore cited, with the exception that they omit to state that it was incumbent on plaintiff to establish that during the indemnity period he required and received the continuous care and treatment of a legally authorized physician. This omission, however, was supplied in another instruction offered by defendant, which, after being modified in

an immaterial respect by the court, was given, and which it is unnecessary to quote.

Defendant submitted two other requests, which were denied, concerning which error is alleged. It is needless to consider them, other than to say that they each embody the vice of a literal interpretation of clause 9.

[6] Some point is made by defendant that under the policy it was provided that the defendant "shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require during the pendency of claim hereunder." It is argued that by plaintiff's going to Italy the company was deprived of this right. It is urged in reply that no such question was raised below, and therefore should not be considered here.

However this may be, we note that the policy contained a provision that the insurance against disease or sickness should not cover any disease, sickness, or disability contracted or *suffered* while outside the limits of the United States, Canada, or Europe. This language certainly implies a recognition in the contract that the disease, sickness, or disability might be suffered in Europe, and there is nothing in the case to show that the defendant could not, in Europe, have made any examination of the plaintiff that it desired, nor was it so claimed.

On the whole case as presented, we find no error in the proceedings below, and the judgment is therefore affirmed, with costs.