ALBERT FUCHS, Respondent, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

First Department, April 14, 1938.

*Herbert F. Garrick* of counsel [*John A. Meyer* with him on the brief; *Tanner, Sillcocks & Friend,* attorneys], for the appellant.

*Irving Schneider,* for the respondent.

MARTIN, P. J. On September 24, 1923, the defendant issued to plaintiff a policy of life insurance in the sum of $2,000. The policy contains total and permanent disability provisions under which the company agreed to waive the payment of premium and also pay ten dollars a month for each $1,000 of insurance under the policy. The pertinent provision thereof entitled the insured to these benefits upon proof that he has " become totally and permanently disabled  *  *  *  so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit."

Claiming to be totally and permanently disabled, the plaintiff instituted this action to recover monthly payments and the return of a quarter-annual premium. The proof established that plaintiff has suffered the loss of hearing of at least sixty-eight and eight-tenths per cent of the right ear and sixty per cent of the left ear. His physician testified that plaintiff is totally deaf.

The bill of particulars sets forth that the disability arose from the fact that "Plaintiff became deaf, which deafness affected both ears. Plaintiff could not hear, could not answer phone, could not take orders from customers."

The plaintiff testified that prior to his affliction he was a salesman of store fixtures, such as cash registers, scales, ice machines and meat choppers. He also testified to efforts to obtain employment of any kind, which he says were unsuccessful because of his condition. Cross-examination developed, however, that in 1935, shortly before the beginning of the period for which disability is claimed, plaintiff had been the owner and proprietor of a butcher shop. He testified he worked there "in a managing capacity," as cashier. He also testified: "I gave it up, I think it was the end of July, 1935, and I could no longer carry it." Asked if he meant he could not carry it financially, he replied: "Financially and on account of my disability, but mostly financially." The business was turned over to plaintiff's brother-in-law, and there is testimony that plaintiff was subsequently observed actively engaged in and about the store during the entire day.

The contract here does not insure against occupational disability. The defendant is obligated to pay only in the event that the insured is prevented, because of the claimed disability, from engaging in any occupation and performing any work for compensation and profit. The question presented is: Has the plaintiff, who is totally deaf, become totally and permanently disabled so as to be prevented from engaging in any occupation and performing any work for compensation or profit under the terms of the policy? The particular disability involved in this case and its applicability to a disability policy claim has not heretofore been the subject of review by an appellate court in this State, so far as search of the authorities has been able to disclose.

Prior to 1922 no scheduled award would be maintainable for loss of hearing under the Workmen's Compensation Law. By chapter 615 of the Laws of 1922, loss of hearing in both ears was recognized as a "disability partial in character but permanent in quality" for which compensation for 150 weeks might be awarded.

In *McCutchen* v. *Pacific Mutual Life Ins. Co.* (153 S. C. 401; 151 S. E. 67) Judge BLEASE made the following interesting comment on

the subject of deafness: " Total deafness may mean ' total disability,' as that term is known to our law, as to some particular person, and it may mean practically nothing, when applied to some other person, in the matter of earning a livelihood or ability to engage in an occupation or employment. There are many, many things to be considered in correctly determining the effect of deafness upon a person's ability and capacity. Each case must stand upon its own peculiar facts, for as the authorities hold, ' total disability ' is a relative matter. It is impossible for this court to lay down any rule of law, which could operate as an absolute standard or guide in the many cases which may have to be determined. The safe rule — in fact, the only rule — when there is conflicting evidence, is to permit twelve men, constituting a jury, to hear the evidence, see the witnesses, and determine what is right."

In the record before us, reference is made to a famous inventor, a distinguished physician, a prominent attorney, and a successful bank official, who found deafness insufficient to prevent their engaging in occupations which proved to be not only profitable to themselves but beneficial to the community at large. The plaintiff, at the time of the trial, was fifty-six years of age and, with the exception of deafness, in perfect physical and mental condition. Notwithstanding the tremendous handicap which deafness presents, there are still available to him opportunities from which compensation or profit may be derived.

We are not prepared to hold, as a matter of law, that total deafness is such disability as to entitle the insured to the benefits claimed. On this record, we hold that the plaintiff has failed to establish that he is prevented from engaging in any occupation or performing any work for compensation or profit.

The determination appealed from and the judgment of the Municipal Court should be reversed, and the complaint dismissed, with costs to the defendant in all courts.

UNTERMYER, COHN and CALLAHAN, JJ., concur.

DORE, J. (concurring). Testimony was adduced that plaintiff conducted a butcher shop as manager and cashier throughout the years 1932, 1933 and 1934, and that his hearing at the trial was about the same as it was during those years. There was no cross-examination by plaintiff's counsel of the witness who adduced this testimony. On cross-examination plaintiff admitted he was the owner or proprietor of the said meat market at 206 East Twenty-ninth street, New York city, which moved to 140 Eighth avenue; that he acted as manager and as cashier, and that he was in business with a Mr. Weiss, his brother-in-law, who at the time of the trial

was operating the meat market at 140 Eighth avenue. It was also shown that plaintiff had signed a lease as president of the Radvan Meat Market, Inc., which leased the store at 140 Eighth avenue for a period of one year from May 10, 1935. The total disability was claimed from November, 1935. Plaintiff also identified the assignment of that lease to his brother-in-law, Paul Weiss, on July 23, 1935, and testified that he gave up the meat market in July, 1935, because he could no longer carry it financially " and on account of my disability, but mostly financially." Two other witnesses testified without successful contradiction that in 1936, long after the claimed disability, plaintiff was seen engaged during the day in that butcher shop run by his brother-in-law and although the brother-in-law was present at the trial he was not called by plaintiff. These facts conclusively contradict plaintiff's other testimony, and I, accordingly, concur in the majority opinion that the plaintiff on this record failed to establish that he was prevented by total and permanent disability from engaging in any occupation for profit.

I consider, however, that the illustrations adduced of a famous inventor and natural genius, Thomas Edison, a distinguished physician, a prominent and outstanding attorney, and a uniquely successful bank official who, despite total deafness, were enabled to engage in profitable occupations, are not a proper standard and criterion to be applied in determining whether, in any particular case, the specific person insured is or is not totally disabled by reason of total deafness. The guide should be not the unique and exceptional man but the average man, the reasonable expectation and purpose of the ordinary man in making an ordinary business contract. The inquiry for the court is how far the parties to the contract reasonably intended the terms to be understood. (See *Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 51.) As was said in that case, quoting with approval *Hall & Hawkins* v. *National Fire Ins. Co.* (115 Tenn. 513, 521; 92 S. W. 402): " Legal conclusions cannot always be safely reached by pressing the processes of logical illation to their ultimate results." The total and permanent disability within the contemplation of the parties is the only total and permanent disability that concerns the court. An ordinary man who is not unique, exceptional, or a genius, and who is fifty-six years of age or more, may well be able to prove *as a fact* that in his case solely by reason of total and permanent deafness he has, within the terms of a policy such as this, been prevented from engaging in any occupation or performing any work for compensation or for profit. The phrase " totally and permanently disabled " found in this and other similar

policies is not to be deemed an absolute term but a relative one. Each case stands upon it own particular facts. Only because this plaintiff failed, as a matter of fact, to sustain the burden of proof that he was so disabled should this judgment be reversed and the complaint dismissed.

Determination appealed from and judgment of the Municipal Court unanimously reversed and the complaint dismissed, with costs to the defendant in all courts.