WORLD INSURANCE COMPANY,
Appellant,

v.

Mary P. CAREY, Appellee.

No. 1693.

Municipal Court of Appeals for the
District of Columbia.

Argued Oct. 10, 1955.

Decided Nov. 30, 1955.

Raymond J. McDonough, Washington, D. C., with whom Lowell J. Bradford, Washington, D. C., was on the brief, for appellant.

Lawrence J. Mills, Jr., Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

On February 16, 1949, appellee, Mary P. Carey, then employed as a secretary in the United States Department of Agriculture, purchased from appellant insurance company a policy of insurance denominated "Federal Employees Special Disability Pol-

icy." In the latter part of 1954 Mrs. Carey was retired from Government service on account of disability. Thereafter she brought this action to recover monthly benefits of $100 provided by said policy of insurance. From a judgment in her favor the insurance company has appealed.

The policy in question insured "against loss of time beginning while this policy is in force and resulting from sickness contracted during any term of this policy, the cause of which originates more than thirty days after the effective date hereof." Under the heading "Sickness Disability Benefits" the policy provided: "If such sickness shall wholly and continuously disable the Insured for one day or more, the Company will pay indemnity at the rate of the Monthly Benefit provided, beginning with the first medical treatment during such disability, but not exceeding twelve consecutive months for any one sickness, provided the Insured is under the regular and personal attendance of a licensed physician, surgeon, osteopath or chiropractor, other than the Insured."

The insurance company argues that the trial court was in error in finding that the insured was wholly disabled within the meaning of the policy. The evidence was that insured's retirement from Government service was due to partial deafness amounting to approximately 50 per cent loss of hearing in one ear and 40 per cent loss in the other; and that because of this disability she was unable to take dictation and perform the other duties of her position. She admitted that she would be able to do general office work where her limited hearing would not be a handicap, that she could perform her household duties and drive an automobile, and that after retirement she had worked a few weeks as saleswoman in a department store, but had quit because of difficulty in hearing and because of the long periods of standing to which she was not accustomed.

The insurance company contends that the policy in question is nonoccupational, i. e., that it does not insure against inability to pursue a particular occupation. And, although conceding that the authorities dealing with interpretation of disability clauses in insurance policies are as "numerous as they are varied and conflicting," [1] the company further contends that under a nonoccupational policy proof of disability requires proof by the insured not only of his inability to carry on his own occupation but also inability to carry on any other occupation he is reasonably fitted for by training and experience. For this proposition numerous cases are cited, including Mutual Life Ins. Co. of New York v. Bryant, 296 Ky. 815, 177 S.W.2d 588, 153 A.L.R. 422; Wuerfel v. Metropolitan Life Ins. Co., 343 Pa. 291, 22 A.2d 747; Preveden v. Metropolitan Life Ins. Co., 200 Minn. 523, 274 N.W. 685; White v. Aetna Life Ins. Co., 117 W.Va. 214, 185 S.E. 236; and Fuchs v. Metropolitan Life Ins. Co., 253 App.Div. 665, 3 N.Y.S.2d 707. However, in each of those cases the policy expressly required disability "from performing any work for compensation, gain or profit, and from following any gainful occupation," or "from pursuing any and all gainful occupations," or "from engaging in any occupation or performing any work for compensation or profit," or some other similar expression. No such expression is found in the policy under consideration. It is true, as the company states, that no reference is made in the policy to the occupation of the insured, but it is also true that the policy did not define disability to mean inability to pursue any occupation. If such was intended it would have been easy to so provide, as did the policies involved in the cases above cited.

■ It will be observed that sickness disability payments were payable if the sickness "shall wholly and continuously disable the Insured for one day or more." If Mrs. Carey's deafness had been temporary and necessitated her absence from her position for only a month or so, it would hardly be claimed that she was not entitled to benefits for that period because she was able to pursue some other occupation during that time.

1. See the numerous cases collected in the Annotation in 149 A.L.R. 9.

We think the insurance against "loss of time," in the absence of clear indication to the contrary, must refer to loss of time from the insured's occupation.

■ Having reached the conclusion that the policy was an occupational one, our answer to the extent of the disability required is found in Metropolitan Life Ins. Co. v. Bovello, 56 App.D.C. 275, 276, 12 F.2d 810, 811, 51 A.L.R. 1040, where, construing an occupational policy, it was said that "it was only incumbent upon the plaintiff [insured] to show by the fair balance of testimony that he was, by reason of disease or sickness, directly and independently of all other causes, unable, in the exercise of ordinary or common care and prudence, to transact or perform the substantial and material acts necessary to the performance of the duties of each and all of his occupations." On the evidence here the trial court was clearly entitled to find that the insured met the test thus stated.

■ The insurance company also insists that recovery should be disallowed because of absence of proof that during the disability insured was under the "regular and personal attendance" of a physician. We see no merit to this contention in view of the physician's testimony that the only useful treatment for insured was a medicinal powder "which he administered periodically." Periodical treatment is both regular and personal.

■ The policy insured against loss of time from sickness "the cause of which originates more than thirty days after the date hereof"; and the company's second major contention is that the trial court was in error in finding that insured's disability did not result from sickness the cause of which had its origin prior to the date of the policy. The testimony of insured was that she had had trouble with her ears periodically due to colds and infections, but that these conditions had always cleared up and she never had any treatment for her hearing until September 1954. A witness testified that insured worked under his supervision from November 1947 to July 1951,

and during that time showed no indication of trouble with her hearing. A fellow worker of insured, however, testified insured complained of difficulty in hearing as early as 1948. The insured's physician testified that he treated her in 1954 and found she had supperative otitis media, an inflammation of the middle ear, with discharge in both ears, and that while this was a contributing factor in the loss of hearing, in his opinion the primary cause was a progressive degeneration of the hearing nerve which started in approximately 1938. This evidence presented a factual question and we cannot rule as a matter of law that it was error for the trial court to find that the cause of the disease originated more than thirty days after the effective date of the policy.

Affirmed.