## Mut. L. Ins. Co. of N. Y. v. Bryant.

Dec. 14, 1943.

Wm. Marshall Bullitt, Bullitt & Middleton, Thomas W. Bullitt, and R. Lee Blackwell for appellant.

Stoll, Muir, Townsend, Park & Mohney and James Park for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In June, 1923, appellant issued to appellee a $5,000 ordinary life insurance policy which contained a total and permanent disability clause providing for payment to appellee of a $50 monthly income and waiver of the annual premium ($122.05) in the event he becomes "totally and permanently disabled by bodily injury or disease, so that he is, and will be, permanently, con-

tinuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation, * * *." At the time the policy was issued appellee was "manager of a wholesale gasoline and oil office," and at the time of his alleged disability sued for, he was "manager and truck driver in the selling of auto parts."

In August, 1941, appellee brought this action against appellant, seeking to recover disability payments provided in that clause of the policy. He alleged that while the policy was in full force and effect and prior to November 1, 1940, he became totally and permanently disabled by and from bodily disease so that he was and would thereafter be permanently, continuously and wholly prevented thereby from performing any work for occupation, gain or profit, and from following any gainful occupation; that under the terms of the policy defendant (appellant) thereupon became indebted to him in the sum of $50 as of November 1, 1940, and a like sum on the first day of each calendar month thereafter so long as he lived and such disability should continue, and appellant became obligated to pay him a monthly income at the rate of $50 per month.

Appellant filed its answer in which it denied the allegations of the petition with respect to appellee's right to recover any sum or amount under the policy. The case was tried before a jury and at the close of the evidence appellant moved the court to peremptorily instruct the jury to find a verdict for it but in the event the court declined to give such instruction, then it instruct the jury that if appellee has become totally and permanently disabled by disease so that he is, and will be, permanently, continuously and wholly prevented thereby from performing *any* work for compensation, gain or profit, and from following *any* gainful occupation, it shall find its verdict for the plaintiff; and, to further instruct the jury that: "A 'total' disability as used in these instructions means a disability from disease which wholly prevents William A. Bryant from performing in a reasonable and practical way all work for compensation, gain or profit and from following in a reasonable and practical way all material acts in the occupation of manager of a wholesale gasoline and oil business." The court refused to give the offered instructions and instructed the jury, in substance, that if appellee became totally and permanently disabled by

disease so he was thereby unable to perform in a reasonable and practical way all the material acts in pursuit of his occupation or employment as "manager and truck driver in the selling of auto parts," then the jury would find for the plaintiff. The jury found for the plaintiff (appellee) and the court entered judgment adjudging that plaintiff recover of defendant $50 per month from November 5, 1940, to July 28, 1941, both inclusive, with interest thereon at the rate of 6% per annum from the date each monthly payment became due, and further adjudged and ordered that the plaintiff be released from paying the annual premiums provided for in the policy sued on and defendant will waive same so long as plaintiff's total and presumably permanent disability shall continue. This appeal follows.

The appellant insists that since appellee's own evidence on cross-examination as well as certain other evidence tends to show that he is not wholly and permanently disabled from pursuing some remunerative occupation other than his regular occupation, the court should have given appellant's offered instruction submitting to the jury the question of whether or not appellee was permanently and wholly disabled from performing *any* work for compensation, gain or profit, and from following *any* gainful occupation, rather than restricting its finding to whether or not appellee was only disabled from following the particular occupation in which he was engaged at the time of the disability. The evidence is conflicting as to whether or not appellee is permanently and wholly disabled from following any gainful occupation. But, conceding, arguendo, that the preponderance of the evidence tends to show that he is disabled from following any gainful occupation, yet we think that his own testimony and that of Dr. Bradley furnishes more than a scintilla of evidence tending to show that he is able to pursue other remunerative occupations and, therefore, was sufficient to take the case to the jury on that issue.

Insurance of this nature is divided into two general classes; namely, (1) "nonoccupational" which insures against a disability which prevents the insured from following *any* and *all* occupations for compensation, gain or profit, and (2) "occupational" policies which insure against a disability preventing the insured from following a particular occupation. These two classes of insurance contracts were recognized in this jurisdiction in

the case of Prudential Ins. Co. of America v. Harris, 254 Ky. 23, 70 S. W. (2d) 949. It is pointed out in that opinion, as well as many others, that the courts of the various states are not in harmony as to the construction of the two classes of policies. In the majority of the states the courts have held that the nonoccupational policy should be given a literal or strict construction and before the insured is entitled to the disability benefits provided in the policy it is incumbent upon him to show that he is totally and permanently disabled from following *any* occupation for gain or profit, rather than show only that he is disabled from following a particular occupation. On the other hand, in several other jurisdictions such policies are given what is termed a ''liberal'' construction and nonoccupational policies which insure against *any* and *all* disabilities, are given the same construction as the occupational policies which insure against disability from following a particular occupation and when the insured shows that he is disabled from following his regular occupation in which he is engaged at the time of the disability, or the one named in the policy, he is entitled to the disability benefits provided in the policy, regardless of whether or not he is able to pursue some other occupation for gain or profit. Beginning with the case of National Life & Accident Ins. Co. v. O'Brien's Ex'x, 155 Ky. 498, 159 S. W. 1134 (decided in 1913), wherein a nonoccupational policy was involved, this court has adhered to the so-called liberal rule of construction, holding that the disability mentioned in such policies means being disabled from following a *particular* occupation rather than *any* occupation.

There was involved in the Harris case, supra, a nonoccupational policy like or similar to the ones involved in the present action and the O'Brien case, and the court applied the liberal rule of construction and held that Harris was entitled to the disability compensation provided in the policy upon his showing physical inability to follow his usual occupation. We may note, however, that that case was considered by the whole court and two of the Justices dissented, since they were of the opinion that the opinion in the O'Brien case is unsound and that the term in the policy then under consideration should have been construed as meaning a disability which prevented the insured from following any substantial or remunerative occupation, or from

doing any labor for which he is fitted or qualified, mentally and physically, and by which he is able to earn a livelihood. We may also note in this connection that in the late case of Penn Mut. Life Ins. Co. v. Schrader, 289 Ky. 469, 158 S. W. (2d) 964, 966, this court was asked to overrule such of its decisions as applied the occupational disability insurance rule of construction to a nonoccupational policy, but the court declined to pass upon the question as to whether or not it would overrule such decisions, since it was found that Schrader was not entitled to recover even under the occupational insurance rule, but the court indicated a doubt as to the soundness of the rule laid down in the O'Brien case and subsequent opinions of a like nature, based on that case, pointing out that its later cases have been "veering towards the majority interpretation for which counsel now contend." We may also call attention to the cases of Brown v. Missouri State Life Ins. Co., 136 S. C. 90, 134 S. E. 224; and McCutchen v. Pacific Mut. Life Ins. Co., 153 S. C. 401, 151 S. E. 67, which may tend to support the minority rule; but, in a later decision, Moyle v. Mutual Life Ins. Co., 201 S. C. 146, 21 S. E. (2d) 561, the same court held that to refuse to apply the language of the policy (inability to engage in *any* occupation) would be to reject the policy's limitations, and that a tobacco salesman who was totally disabled to engage in that occupation could not recover if he remained able to pursue some other occupation for which he was fitted by his education, training and experience. It appears, however, that the insured, Moyle, was qualified by education, training and experience to follow other occupations and had taken a position at a salary of $3600 per year. These facts may render doubtful the applicability of the Moyle case to the present case, since, perhaps, if it had not been shown that Moyle was qualified by training, education and experience to follow other remunerative occupations and had not been employed at a substantial or remunerative salary, the court's decision in that case might have been to the opposite effect. We find an apparent conflict in the opinions of the West Virginia court. Compare Hetzel v. Pacific Mut. Life Ins. Co., 108 W. Va. 22, 150 S. E. 385 (which is in favor of the minority rule), and the later case of Jones v. Connecticut General Life Ins. Co., 114 W. Va. 651, 173 S. E. 259, which apparently is in conflict with the Hetzel case, supra. In the last-cited case the court held

that in order to recover under the terms of the policy the insured must be disqualified from following her own occupation and other occupations. In the case of Buffo v. Metropolitan Life Ins. Co., 277 Ill. App. 366, strongly relied on for appellant, the policy provided disability benefits in the event Buffo became, so totally and permanently disabled that he was "prevented thereby from engaging in *any* occupation and performing *any* work for compensation or profit." The Illinois court pointed out the distinction between the two classes of policies and held that Buffo's policy came within the class designated as total disability policies (nonoccupational) and not within that group termed occupational disability policies. The court said: "The policy in this case is a life policy containing a total disability clause, and it would seem, in examining the terms thereof, that the words used necessitate that the insured should be so far disabled as to prevent his following *any* occupation or performing *any work or labor for profit.*" The court then referred to the rule that contracts of insurance are to be construed favorably to the insured, but further said: " * * * we do not understand this (rule) permits us to read something into the policy directly repugnant to the written terms thereof, or to alter, change, or ignore conditions and provisions of the policy, which appear to be plainly set out and over which no question of ambiguity may be said to exist." It is unnecessary for us to incumber this opinion by undertaking to point out all of the cases in various jurisdictions similar to or like the Buffo case, supra. It is sufficient to say that the courts of last resort of the majority of the states are in harmony with the Buffo case.

A clear statement of the reasoning in support of the minority rule is contained in the case of Foglesong v. Modern Brotherhood, 121 Mo. App. 548, 97 S. W. 240, which is cited and quoted from with approval in the domestic case of Henderson v. Continental Casualty Co., 239 Ky. 93, 39 S. W. (2d) 209, 210 (which was prior to the Harris and Schrader cases, supra), as follows: " 'But we are unwilling to adopt such a doctrine, the effect of which would be, practically, to reduce all such contracts to nullities and to make them the instruments of extracting dues from policy holders without creating any liability on the part of the insurers. Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that

prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoestrings or lead pencils, or follow some similar calling; in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties. In order to carry out the intent of the parties, it is our duty to disregard the broad language used which would have the effect to defeat the purpose of the contract and render it a nullity. It has been said that: ''The policy is the law by which the mutual rights and liabilities of the parties are to be measured, and should be construed strictly against the insurer, where they narrow the range and force of the allegation or provides for forfeiture.'' * * * The language of the policy, ''permanent and total disability of said member, which renders him unable to carry on or conduct any vocation or calling,'' the vocation of the insured not being designated, should be construed as meaning, if anything, the vocation or calling in which he might be following at the time he became disabled, and not any vocation whatever which he might be able to follow after he had been disabled. * * * We have seen to what absurd consequences a literal construction of the language would lead.' ''

It may be noted in connection with the above quotation that in a later Missouri case (Katz v. Union Cent. Life Ins. Co., 226 Mo. App. 618, 44 S. W. (2d) 250) the same court held that what constitutes inability to follow ''any occupation'' under a nonoccupational policy depends upon the attainments of the person disabled, his education, experience, age and natural ability and not upon what his regular occupation may have been when the policy was issued or when he became disabled. This case apparently is in conflict with the Foglesong case, supra.

We would not subscribe to such an absurd rule of construction as to hold that if the insured, in such policies, is able to perform some trivial occupation, such as the peanut trade or selling shoe strings or lead pencils, which would yield only a pittance or a nominal income,

such would satisfy the terms of the insurance contract. It would be unreasonable to believe that anyone would pay a substantial sum or premium for an insurance policy insuring against loss by reason of physical inability which might not afford protection against a reasonably substantial loss. We do not think it reasonable to believe that even the insurer, as well as the insured, contemplated that the word "any" would be given such narrow or literal construction as pointed out in the Henderson case, supra, and in effect thereby defeat the very purpose for which the policy was issued. We think the words "gain" and "profit" as used in such contracts mean something reasonably substantial rather than a mere nominal gain or profit. Nor, is it reasonable to believe that an insurance company would issue an occupational policy for the same rate of premium as that charged for a nonoccupational policy, since the risk assumed under the former is much greater than that of the latter. The fact that the two classes of policies do not carry the same rate of premium is recognized and referred to in the Harris case, supra, wherein it is pointed out that the occupational policy carries a higher rate of premium.

We have reached the conclusion the two classes of policies constitute different contracts, and that the words "any or all," and other words of like import, when used in such policy contracts, should not be construed to mean a single or particular occupation but should be given the construction and meaning which such language naturally import. In such contracts (nonoccupational) the insured should be required to show physical inability not only to follow his regular occupation but also any occupation for which he may be fitted by education, training and experience, which may yield a reasonably substantial gain or profit, rising to the dignity of an income or livelihood. This construction is more favorable to the insured (appellee) than the language of the contract warrants if we should give it a strict or literal construction. The minority rule is generally referred to as the "liberal" rule of construction, but we think it is so ultra liberal as to surpass all rules of construction, since it changes the meaning of plain and unambiguous language. "Liberal construction" does not mean that words should be forced out of their natural meaning, but simply that the words should receive a fair and reasonable interpretation so as to attain

the objects for which the instrument is designed and the purpose to which it is applied. Lawrence v. McCalmont, 43 U. S. 426, 449, 2 How. 426, 449, 11 L. Ed. 326. See also, In re Johnson's Estate, 98 Cal. 531, 33 P. 460, 21 L. R. A. 380. In Causey v. Guilford County, 192 N. C. 298, 135 S. E. 40, "liberal construction" is defined as that by which language is enlarged or restrained to accomplish the intended purpose, as opposed to "strict construction," which refuses to extend import of words used. See also the domestic cases of Klein v. Auto Parcel Delivery Co., 192 Ky. 583, 234 S. W. 213; Pinkston v. Watkins, 186 Ky. 365, 216 S. W. 852.

After due and careful consideration, we have concluded that the "minority" rule of construction adopted in the O'Brien case and followed thereafter and applied in numerous other cases, too numerous to mention, is unsound and a misapplication of the law applicable to such insurance contracts. It follows, therefore, that the decision in the O'Brien case (155 Ky. 498, 159 S. W. 1134) and all subsequent decisions of a like nature should be and hereby are expressly overruled in so far as such decisions purport to hold that the same rule of construction applicable to an occupational policy is also applicable to the nonoccupational policy, and should be given a reasonably liberal construction as indicated above, instead of going to either extreme. Provided, however, this opinion is not to be given a retroactive effect so as to affect appellee's policy and other contracts made and entered into subsequent to the effective date of the opinion in the O'Brien case. Such policies issued after this decision becomes final will be controlled by the conclusions expressed herein. Such was the holding of this court in the recent case of World Fire & Marine Ins. Co. v. Tapp, 279 Ky. 423, 130 S. W. (2d) 848, 852, wherein we said: "However, we are confronted with the fundamental policy of government, expressed in the constitutions as a restriction upon the enactment of any legislation, that there may be no impairment of the obligations of a contract. Adhering to that fundamental principle and preventing the unjust result which would follow an outright retraction of a judicial declaration and, as well, avoiding the overruling of cases upon the faith of which contracts have been made, we have recently adopted the policy of holding such existing contracts not to be affected by the new conclusion, and making a declaration in futuro to the effect that a change

of opinion will affect only contracts made subsequent thereto.''

It is insisted for appellant that in the event we overrule the minority rule and adhere to the majority rule, the opinion should be given a retroactive effect and applied to all such contracts entered into subsequent to the opinion in the O'Brien case, because the overruled opinions do not involve the construction of any statutory or constitutional provision, but are mere decisions expressive of general or common law, and citing in support thereof, Falconer v. Simmons, 51 W. Va. 172, 41 S. E. 193; Mason v. A. E. Nelson Cotton Co., 148 N. C. 492, 62 S. E. 625, 18 L. R. A., N. S., 1221, 128 Am. St. Rep. 635. Since the decisions of a court of last resort is the law of the state, whether it be the construction of a statutory or constitutional provision, or an expression of general or common law, we are not favorably impressed with the vague distinction drawn by the authorities, supra. See Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U. S. 358, 53 S. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254, 260, which apparently are in conflict with the cases, supra. Be that as it may, however, the Tapp case, supra, is conclusive of the question in this jurisdiction.

Wherefore, the judgment is affirmed.

Whole Court sitting.

Judge Rees dissenting.

In view of my dissent in Prudential Ins. Co. v. Harris, 254 Ky. 23, 70 S. W. (2d) 949, 953, I feel that it is incumbent upon me to state briefly my reason for dissenting in this case.

At the time the opinion in the Harris case was rendered the disability clause in nonoccupational policies had been considered by this court in only a few cases and it was my opinion that the question had never been thoroughly examined. In the Harris case the interpretation apparently adopted in the O'Brien case was reconsidered and reaffirmed. In the course of an exhaustive opinion approved by a majority of the court it was said: ''But at this time, with so many decisions to the contrary, we must have due regard for the doctrine of stare decisis. For twenty years and more this rule of construction has been consistently applied, and every insurance policy of this character issued in the state during that time has been with the knowledge that their terms would be so defined by the courts. If the insur-

**826**

ance companies have not been altogether satisfied, we are aware of no reason why a more explicit limitation could not have been incorporated in the policies."

What was said then applies with far greater force now. Almost ten years have elapsed since the Harris opinion was rendered and during that period the same question has been before the court on numerous occasions, and invariably the rule announced in the O'Brien and Harris cases has been reaffirmed. Undoubtedly insurance companies doing business in this state have long since accommodated themselves to the interpretation by this court in a long line of decisions of the clause in question. I approve of the rule making prospective, but not retroactive, in effect, an opinion overruling former opinions, but I am of the opinion that it should be used sparingly and that the present case is not a proper one for its application except under unusual circumstances where great hardship would result, the rule should be limited to cases where a change of construction of a constitutional or statute law is made by a subsequent decision. 14 Am. Jur., Courts, Section 130.

Chief Justice Fulton and Judge Cammack concur in this dissent.