# Travelers Ins. Co. of Hartford, Conn., v. Williams.

December 6, 1946.

Stoll, Muir, Townsend, Park & Mohney for appellant.

Shumate & Shumate for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

On February 19, 1941, the Travelers Insurance Company issued to Willie Williams an accident insurance policy insuring him against loss of life or disability caused by bodily injuries effected through external, violent and accidental means. The policy recited that the insured was by occupation a machinist employed by the Louisville & Nashville Railroad Company. Part B of the policy reads:

"Total and Partial Disability—
Single Indemnity

"Total Loss of Time.

Or, if such injuries independently and exclusively of all other causes shall wholly and continuously disable the Insured from the date of accident from engaging in any occupation or employment for wage or profit, the Company will pay, so long as the Insured lives and suffers such total disability, monthly indemnity at the rate hereinbefore specified.

"Partial Loss of Time.

Or, if such injuries, independently and exclusively of all other causes, shall wholly and continuously disable

the Insured from date of accident from performing one or more important daily duties pertaining to his occupation, or for like continuous disability following total loss of time, the Company will pay for the period of such disability, but not exceeding eight consecutive months, a monthly indemnity of one-half of the amount payable for total disability.

"No payment of monthly indemnity shall be made in case of any loss enumerated in Part A, except as therein provided."

On February 19, 1943, the insured was accidentally injured in the shops of the Louisville & Nashville Railroad Company, and totally disabled from engaging in his occupation as machinist. The Insurance Company paid him $80 a month until May, 1945, when it refused to make further payments. Thereafter he brought an action to recover the monthly installments due subsequent to April 28, 1945, the date of the last payment, and in his petition alleged that on February 19, 1943, he received injuries while engaged in his employment as machinist in the shops of the Louisville & Nashville Railroad Company, and as a result thereof "has been wholly and continuously disabled from engaging in his occupation as machinist and from engaging in any employment for wage or profit." The defendant admitted in paragraph I of its answer that the plaintiff was unable to follow the occupation given in the policy, to wit, that of a machinist, but denied that he had been wholly and continuously disabled or disabled at all from engaging in any employment for wage or profit. In paragraph II it alleged affirmatively that the plaintiff at the time of the filing of the action was able to follow and was following an occupation for which he was fitted by education, training, and experience, which yields him a reasonably substantial gain or profit rising to the dignity of an income or livelihood. The plaintiff filed a demurrer to the answer, which was sustained. The defendant declined to plead further, and a judgment for the amounts prayed for in the petition was entered.

As stated by appellant, the following question is presented on this appeal: Where the appellee is unable to follow the duties of his occupation as set out in the insurance policy, but is able to pursue an occupation for

which he is fitted by education, training, and experience, which yields him a reasonably substantial gain or profit rising to the dignity of an income or livelihood, is the appellee entitled to recover his total loss of time under Part B of the insurance policy or is he only entitled to recover for partial loss of time under Part B of the policy?

Prior to the decision in Mutual Life Insurance Co. of New York v. Bryant, 296 Ky. 815, 177 S. W. 2d 588, 153 A. L. R. 422, the type of disability clause in an insurance policy which requires that the disablement must be such as to prevent the insured from engaging in any occupation or employment for wage or profit was consistently construed by this court to mean that the disability must be such as to prevent the insured from following his particular business or occupation. By the court's construction, a general or nonoccupational policy was converted into an occupational policy. This construction was first adopted in National Life & Accident Insurance Co. v. O'Brien's Executrix, 155 Ky. 498, 159 S. W. 1134, and was followed consistently until the decision in Mutual Life Insurance Co. of New York v. Bryant, supra, which was rendered December 14, 1943, when the decision in the O'Brien case and all subsequent decisions of like nature were overruled. The decision in the Bryant case, however, was given prospective effect only, and it was held that policies issued before the date of the opinion should be construed according to the rule announced in the O'Brien case. The insurance policy in the present case was issued in 1941, but appellant insists that the rule in the O'Brien case is not applicable here because the policy in the insuring agreement in Part B is vitally different from the insuring agreement contained in each case where the rule in the O'Brien case was applied. It is argued that Part B of the policy contains both a nonoccupational and an occupational clause, and in order to give effect to all of the language used in the policy the first clause of Part B must be construed as the nonoccupational part of the policy, entitling the insured to one schedule of benefits in the event he is wholly and continuously disabled from engaging in any occupation or employment for wage or profit, and the second clause must be construed as the occupational part of the policy, entitling the insured to different benefits if he is disabled

from performing one or more important daily duties pertaining to his occupation. The policy was issued in the light of the rule of construction then in effect. Under that rule, the language used in the first clause of Part B meant that the disablement must be such as to prevent the insured from following his usual occupation. The second clause merely provided for benefits for partial disability. In other words, the policy was an occupational policy providing for benefits for both total and partial disability. A similar situation was presented in Henderson v. Continental Casualty Co., 239 Ky. 93, 39 S. W. 2d 209, decided in 1931. There, the policy provided indemnities for loss resulting from accident or sickness. A monthly sickness benefit was payable if the insured should "be wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation by reason of sickness." The policy also contained a clause insuring against accident and providing that the indemnity should be paid for such period of time as insured was wholly disabled from performing "each and every duty pertaining to his occupation." An argument was made in that case similar to the argument in the present case, and the court said:

"The appellee argues, however, that the construction placed upon such a clause as is here involved by our decisions should not be followed in this case because in that part of the policy referring to accident indemnity it was provided that the indemnity should be paid for such period of time as insured was wholly disabled from performing 'each and every duty pertaining to *his occupation* (italics ours), and that, since this language used in this part of the policy is different from that used in that part providing for sickness indemnity, it was clearly not intended that the two claims should be construed alike. But, as stated, a fixed construction in law had been placed on the language used in the sickness indemnity part of the policy, and that construction made it mean just what the accident indemnity part literally says, which, being true, there was no difference in law in the meaning of the two clauses. There being no difference in meaning, there was no such conflict as to require a different construction to be placed upon them, although they both appeared in the same policy."

We think the circuit court properly construed the policy in question, and the judgment accordingly is affirmed.