HERMAN DITTMAR, PLAINTIFF-APPELLANT, v. CONTINENTAL CASUALTY COMPANY, DEFENDANT-RESPONDENT.

Argued March 17, 1959—Decided April 20, 1959.

*Mr. William E. O'Connor, Jr.,* argued the cause for the plaintiff-appellant (*Messrs. Kushinsky & Muccifori,* attorneys; *Mr. Albert Kushinsky,* of counsel).

*Mr. George D. McLaughlin* argued the cause for the defendant-respondent (*Mr. Victor S. Kilkenny,* of counsel on the brief).

The opinion of the court was delivered by

BURLING, J. This is an action brought to recover total disability payments pursuant to a business and professional accident and sickness policy issued by defendant to plaintiff. The Superior Court, Law Division, sitting without a jury, determined that under the facts and the terms of the policy plaintiff was totally disabled and was entitled to recover $100 monthly for life. Defendant made a motion for a new trial which was denied, and then prosecuted an appeal to the Superior Court, Appellate Division.

The Appellate Division determined that plaintiff was only partially disabled under the terms of the policy and modified the judgment of the trial court accordingly by providing that plaintiff is entitled to total disability ($100 per month) for no more than 12 months in all, and partial disability at a 40% rate for three additional months. 50 *N. J. Super.* 593. We granted plaintiff's petition for certification to review the cause. 28 *N. J.* 39.

On April 9, 1955 plaintiff accidentally fell into a gasoline fire, severely burning his right hand and arm. He was hospitalized for a period of 57 days and required two operations and two skin grafts. As a result, plaintiff's right arm is totally useless and, because of the nature of the injuries to his arm, his total efficiency is greatly impaired. He cannot stay out of doors for longer than 10 or 15 minutes in cold weather as his right hand becomes numb and pains him and he cannot manipulate his fingers; in warm weather out of doors and in the sun the hand swells and breaks out with blisters. As plaintiff's treating physician testified, these

symptoms are due to impairment of the blood vessels beneath the skin of his right arm which normally serve the function of heating that extremity in cold weather and to the fact that there are no sweat glands left on the arm, the skin having been totally burned away, so that in hot weather the arm burns and stings.

Plaintiff is by trade a self-employed electrical contractor. The policy in question had been issued to him on April 21, 1954. In the application form plaintiff described his occupation as "Electrical Contractor" and his duties as "Working Contractor" and further stated that he was self-employed.

The critical language of the policy for purposes of determining the present dispute is as follows:

"A. *Total Disability.* When, as the result of injury and commencing while this policy is in force, the Insured is wholly and continuously disabled and *prevented from performing each and every duty pertaining to his occupation,* the Company will pay the Monthly Indemnity stated in the Schedule for the period the Insured is so disabled, not to exceed twelve consecutive months. Subject to the 'Maximum Period Total Disability Accident Indemnity' stated in the Schedule and after the payment of Monthly Indemnity for twelve months as aforesaid, the Company will continue the payment of Monthly Indemnity so long as the Insured is wholly and continuously disabled and *prevented by reason of said injury from engaging in each and every occupation or employment.* When such disability commenced after the Insured's sixtieth birthday and such birthday occurs more than two years after the effective date of this policy, the indemnity otherwise payable under this Paragraph A will be reduced fifty per cent.

B. *Partial Disability.* When, as the result of injury and commencing while this policy is in force or immediately following a period of total disability for which indemnity is payable under Paragraph A of this Part, the Insured is continuously disabled and *prevented from performing one or more of the important duties of his occupation,* the Company will pay forty per cent of the Monthly Indemnity stated in the Schedule for the period of such disability, not to exceed three consecutive months as the result of any one accident." (Emphasis supplied)

The plaintiff is 48 years of age and has been in the electrical contracting business for 32 years. He left school in the eighth grade to go to work for his father who was

in the electrical business, and worked as an employee of his father until 1950 when his father died. Plaintiff never worked for anyone other than his father, and during that time did physical work only, the general management and supervision of the business being performed by his father.

Upon the death of his father plaintiff succeeded to the business and continued its operation. He then undertook the managerial and supervisory functions of the enterprise, soliciting contracts, estimating jobs, purchasing supplies, and checking on complaints. He was assisted by a female cousin, originally employed by his father as a secretary who has been "running the office" for some 25 years.

Further, prior to the accident plaintiff was basically an electrician. He employed one and sometimes two men to assist him, depending on the extent of the work to be performed. These employees were paid by the hour. Plaintiff worked physically full time on every job, at the same time, of course, generally supervising the one or two employees who worked with him. If the particular job demanded only one person, plaintiff performed the work himself and also did all emergency work himself.

Since the accident it is undisputed that plaintiff has been totally disabled from performing the manual labor relating to his occupation as an electrician. The injury to his right arm is such that he is unable to climb poles, use heavy tools, handle heavy material, or control light tools despite his attempts to do so. Moreover, he cannot remain out of doors for any extended length of time in cold weather or in hot weather in the sun.

Plaintiff admitted in the pretrial order that he "has been able to engage in a limited supervisory capacity but because of his injuries lacks the manual dexterity necessary to perform the services of an electrician." The evidence in the case, consisting of the testimony of plaintiff and his two medical experts, defendant having declined to offer proofs, indicates that plaintiff has been performing some managerial and supervisory functions following the accident.

Since November of 1955 plaintiff has been running the business with the assistance of his cousin and his wife who now makes up the payroll and writes his checks. He does the estimating with the assistance of his secretary who does the writing, he purchases some of the supplies, his men purchasing the remainder, and he supervises the men at times, although on the job supervision is limited by his inability to withstand heat and cold. He admitted that he still makes money although not as much as before the accident.

Subsequent to the accident defendant paid plaintiff total disability benefits from April 1955 until December 25, 1955 and thereafter refused to make further payments. On August 13, 1956 plaintiff instituted the instant action to recover past due indemnity payments from December 25, 1955 and also sought a judgment that defendant pay to plaintiff $100 per month for as long as he may live. The trial court found that plaintiff was totally disabled within the terms and meaning of the policy, *i. e.,* prevented by reason of his injury "from engaging in each and every occupation or employment," and entered a judgment for $1,995.50 representing total disability payments from December 25, 1955 to June 25, 1957, inclusive of interest and $110 owing plaintiff for hospital indemnity under the policy. The court further ordered:

"4. That the defendant Continental Casualty Company, be and is hereby Ordered to pay plaintiff the sum of $100.00 per month commencing on the 25th day of June 1957 and for each and every succeeding month so long as plaintiff may live."

The Appellate Division, after reviewing the New Jersey authorities on the question of construction of disability insurance policies and particularly relying on the opinion of this court in *Kazala v. Prudential Insurance Company of America,* 12 *N. J.* 75 (1953), concluded that plaintiff, since he was still able to perform managerial and supervisory functions was only partially disabled within the terms and meaning of the policy, *i. e.,* "prevented from performing one or more of the important duties of his occupation."

The sole issue on this appeal is whether plaintiff is "totally" or "partially" disabled within the intendment of the accident and sickness policy.

The policy in question defines three basic types of disability with different benefits for each. Paragraph "A," defining "Total Disability" first provides that if the insured as a result of injury is "prevented from performing *each* and *every* duty pertaining to his *occupation*" (emphasis supplied) the company will pay the scheduled monthly indemnity for a period not exceeding 12 months. Secondly, thereafter and so long as the insured is "wholly and continuously disabled and prevented by reason of said injury from engaging in *each and every occupation or employment*" (emphasis supplied), the scheduled monthly payments will be continued.

Lastly, paragraph "B," defining "Partial Disability," provides that following a period of total disability as defined in "A" if the insured is "continuously disabled and prevented from performing *one or more of the important duties of his occupation*" (emphasis supplied), the company will pay 40% of the scheduled monthly indemnity for the period of such disability not exceeding three consecutive months.

There are, therefore, two distinctly different definitions of "total disability" and a separate definition of "partial disability." The courts, in construing policy provisions substantially similar to those utilized here, have drawn a distinction between *occupational* disability insurance and *general* or *total* disability insurance. The former is intended to insure against disability of the insured to engage in his specific usual occupation, while the latter is intended to insure against disability of the insured in any occupation for which he may be reasonably suited. *Mutual Life Ins. Co. of New York v. Bryant,* 296 *Ky.* 815, 177 *S. W. 2d* 588, 153 *A. L. R.* 422 (*Ct. App.* 1943), rehearing den. (1944); *Travelers Ins. Co. v. Hill,* 76 *Ga. App.* 640, 46 *S. E. 2d* 755 (*Ct. App.* 1948); *Weum v. Mutual Benefit Health & Acc. Ass'n.,* 237 *Minn.* 89, 54 *N. W. 2d* 20 (*Sup. Ct.* 1952).

■ Thus, in order for plaintiff to recover under the terms of the instant policy indemnity payments for life (as he here seeks), he must demonstrate that he is suffering from a general or total disability which prevents him from "engaging in each and every occupation or employment." It is not sufficient to prove that he is "prevented from performing each and every duty pertaining to his occupation" under the first sentence of paragraph "A," since the most that he can then recover is indemnity for a period of 12 months. As we have noted, the case was tried on the theory that plaintiff is not now a working electrical contractor although he does perform limited managerial and supervisory functions. The issues, as projected, centered about the construction of the policy in its application to plaintiff's disability to perform his customary occupation. No evidence was offered on the question of whether plaintiff is currently suited or able to engage in other occupations which he might by reason of his training, education and experience reasonably be expected to pursue. See *e. g., Nickolopulos v. Equitable Life Assurance Society,* 113 *N. J. L.* 450 (*E. & A.* 1934); *Mutual Life Ins. Co. of New York v. Bryant, supra.*

■ The record in its present state is inadequate to determine that question and therefore the cause must be remanded for taking further testimony to that end. On the remand it must be proven that plaintiff is totally disabled from engaging not only in his usual occupation, but others which by virtue of his training, education and experience he might reasonably be expected to pursue. The burden of proving total disability is upon the plaintiff. *World Insurance Company v. Carey,* 118 *A. 2d* 390 (*Mun. Ct. App. D. C.* 1955); *Preveden v. Metropolitan Life Ins. Co.,* 200 *Minn.* 523, 274 *N. W.* 685, 688 (*Sup. Ct.* 1937); *White v. Aetna Life Ins. Co.,* 117 *W. Va.* 214, 185 *S. E.* 236, 237 (*Ct. App.* 1936).

■■ In order to facilitate the determination below, we shall deal with the general legal principles applicable to the

construction of the policy at hand. The New Jersey cases have followed the generally prevailing view that accident disability policies shall be afforded a liberal construction. See *e. g., Gross v. Commercial Cas. Ins. Co. of Newark*, 90 N. J. L. 594 (*E. & A.* 1917); *Booth v. United States Fidelity & Guaranty Co.*, 3 N. J. Misc. 735 (*Sup. Ct.* 1925); *Nickolopulos v. Equitable Life Assurance Society, supra; Woodrow v. Travelers Ins. Co.*, 121 N. J. L. 170 (*E. & A.* 1938); *Shaffer v. Metropolitan Life Ins. Co.*, 133 N. J. L. 53 (*Sup. Ct.* 1945); *Peterson v. Hartford Accident & Indemnity Co.*, 32 N. J. Super. 23 (*App. Div.* 1954); *Fannick v. Metropolitan Life Ins. Co.*, 34 N. J. Super. 556 (*App. Div.* 1955). See generally the exhaustive annotations at 149 A. L. R. 7–186 (1944); 153 A. L. R. 430 (1944). Provisions in policies requiring that an insured be totally disabled from engaging in any occupation or employment are not construed as requiring a state of helplessness. The court in *Rosenthal v. Colonial Life Insurance Co.*, 118 N. J. Eq. 182 (*Ch.* 1935), quoted with approval from the oft-cited opinion of the court in *Foglesong v. Modern Brotherhood*, 121 Mo. App. 548, 97 S. W. 240 (*Kan. City Ct. App.* 1906):

> " 'Common knowledge of the occupation in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoestrings or lead pencils, or follow some similar calling; in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties.' "

The generally accepted test was set forth by Mr. Justice Francis (then Judge) in *Fannick v. Metropolitan Life Ins. Co., supra,* 34 N. J. Super. at page 559:

"Such language does not impose a requirement that an insured must be absolutely helpless in order to qualify as totally disabled. A person may be able to do some work for compensation in an endeavor for which he is trained or qualified and yet be totally disabled within the fair and reasonable intendment of the policy. * * * It is generally said that to justify a recovery the disability must be such as renders an insured *unable to perform all the substantial and material acts necessary to the prosecution of his business or occupation in a customary and usual manner.*" (Emphasis supplied)

To be distinguished is the partial disability clause of the instant policy which provides that the insured is partially disabled when he is prevented from performing "one or more of the important duties of his occupation."

*Kazala v. Prudential Insurance Co. of America, supra,* relied upon by the Appellate Division, is not at variance with these views. In the *Kazala* case the employer had established, pursuant to *R. S.* 43:21–25 *et seq.,* a private plan for the payment of disability benefits in lieu of the benefits of the state plan established by statute. Part I, sec. 2(a) of the policy there in question provided for payment of benefits when the employee becomes "wholly disabled from accidental bodily injury or sickness so as to be prevented from performing any and every duty pertaining to any occupation for remuneration or profit." Part I, sec. 2(a), was a general or total disability provision. Part II, sec. 2(e), provided that when benefits were not payable under the private plan, the insured would nonetheless not be foreclosed from recovering such benefits as were payable under the New Jersey Temporary Disability Benefits Law. The statutory criterion is disability "resulting in his total inability to perform the duties of his employment." This language refers to occupational disability.

The facts were that Kazala was an assistant superintendent with the Prudential Insurance Company in charge of a group of agents. He had decided late in August 1951 to change his employment and apply for a real estate salesman's license. He filed an application for a license on October 10, 1951 and on the same day sent a letter of resignation to

his employer effective October 29, 1951. Shortly thereafter (the exact time was in dispute) he took the real estate salesman's examination and received his license. On October 23, 1951 he ceased working for Prudential. On that date he was treated by his family physician complaining of tiredness about the heart, pain, exhaustion and difficulty in breathing. The family physician found no abnormality. On October 24, 1951 Kazala was examined and treated by a specialist in internal medicine and cardiology who "felt" that Kazala was "suffering myocardial arteriosclerosis with an anginal syndrome" and recommended immediate "removal from his present environment." It was recommended that Kazala "cease work immediately and rest for a period of about three months." There was no medical testimony that Kazala at any time was so incapacitated that he was disabled from performing any duty pertaining to any employment. After leaving Prudential Kazala had taken "a little interest in real estate." In that case we noted that an insured could not recover under a general or total disability provision, where the facts indicated only a disability to engage in his prior occupation. As was there stated:

"In the present case, where inability to perform the duties of the employee's employment with Prudential is expressly covered by benefits allowable under part II, section 2(e) of the private plan, in effect incorporating the statutory provisions as above detailed, it would do violence to the wording of part I, section 2(a) to hold that the phrase there used means disability to perform only the duties of his employment with Prudential, or a mere partial disability to engage in any other occupation." (12 *N. J.* at *page* 84)

Similarly here, plaintiff could not recover total disability payments after the first 12 months if upon the remand he can only show that he was unable to perform the duties of his occupation or a "mere partial disability" to engage in any other occupation. To state the proposition affirmatively, plaintiff must show not only an inability to do all the substantial and material acts necessary to the prosecution of his present business, but also all the substantial and material

acts necessary to the prosecution of such other businesses or occupations which he might reasonably be expected to pursue.

■ The further question is, when is a person unable to perform all of the substantial and material acts necessary to the prosecution of a business or occupation within the area of his qualifications? More specifically, is plaintiff necessarily precluded from recovering total disability payments under the second sentence of paragraph "A" of the policy because he is able to engage in limited managerial and supervisory functions? The cases generally recognize that a self-employed person who, previous to his injury, performed both manual labor and managerial and supervisory functions (as most one man or small business operations must do) and who after the injury can perform only limited managerial or supervisory functions may recover total disability benefits. See *e. g., Atlantic Life Ins. Co. v. Worley,* 161 *Va.* 951, 172 *S. E.* 168 *(Sup. Ct. App.* 1934); *Bubany v. New York Life Ins. Co.,* 39 *N. M.* 560, 51 *P. 2d* 864 *(Sup. Ct.* 1935); *Hoover v. Mutual Trust Life Ins. Co.,* 225 *Iowa* 1034, 282 *N. W.* 781 *(Sup. Ct.* 1938); *Weum v. Mutual Benefit Health & Acc. Ass'n., supra; Travelers Ins. Co. v. Hill, supra; Schoeman v. Loyal Protective Life Ins. Co.,* 239 *Iowa* 664, 32 *N. W. 2d* 212 *(Sup. Ct.* 1948); *Mason v. Loyal Protective Life Insurance Company,* 91 *N. W. 2d* 389 *(Iowa Sup. Ct.* 1958); *Lauren v. Automobile Owners' Association,* 92 *N. W. 2d* 659 *(S. D. Sup. Ct.* 1958).

■■ The basic test is whether the insured may obtain employment in the open labor market either in his previous occupation or such occupation which by education, training and experience he might reasonably be expected to pursue. See *e. g., Anair v. Mutual Life Insurance Co. of New York,* 114 *Vt.* 217, 42 *A. 2d* 423, 159 *A. L. R.* 547 *(Sup. Ct.* 1945). For example, if plaintiff's present supervisory and managerial abilities are such that he could not expect to secure employment within the areas of his competence, he must be considered at least insofar as those talents are concerned as "prevented by reason of said injury from en-

gaging in each and every occupation or employment" within the meaning of the policy as reasonably construed.

Plaintiff cannot be precluded from recovery simply because, with the aid of employees, he continues to operate his business and to perform minor entrepreneurial duties and earns an income therefrom. The basic source of his income under those circumstances is capital investment and not labor. As stated by the court in *Lorentz v. Aetna Life Ins. Co. of Hartford, Conn.*, 197 *Minn.* 205, 266 *N. W.* 699, at *page* 701 (*Sup. Ct.* 1936):

"A person possessed of capital and some talent for business may engage in an occupation for profit though bound to his bed by disease or infirmity, by employing others to do the work. But we do not think the clause, in the insurance policy here involved, 'if any employee * * * becomes totally disabled and presumably will thereafter during life be unable to engage in any occupation or employment for wage or profit' should be construed to mean that the insured must prove not only that he is so disabled physically that he cannot earn wages in his usual occupation or any other for which he may fit himself within a reasonable time, but must also prove that the disability is such that he could not by the employment of others conduct a business for profit. An occupation here must have the same meaning as employment; that is, either working for wages when employed by another, or for the reward or profit obtained from one's own labor in an occupation or vocation. If the evidence had shown that plaintiff had the physical ability to do the work or a substantial part of the work in the business he had at Staples, it would have defeated a recovery. But when the jury could find that he was disabled from doing or attending to any but a trifling part, and had to employ others to perform substantially the whole thereof, we think a recovery was warranted."

We note that the trial court was in error in adjudging that the defendant must pay plaintiff $100 monthly for life. Payments under the policy are conditioned upon continuance of the disabling condition.

### FORM OF JUDGMENT.

(a) If upon the remand the trial court finds that plaintiff was unable to perform all the substantial and material acts necessary to the prosecution of his *occupation* for a

period of 12 months following the accident, he is entitled under the first coverage in paragraph "A" to a judgment of 12 months of indemnity at $100 per month, crediting the amount paid, plus interest for the unpaid portion thereof.

(b) If the trial court further finds that plaintiff is unable to perform all the substantial and material acts necessary to the prosecution not only of his customary occupation, but of any occupation which by virtue of his training, education and experience he might reasonably be expected to pursue under the second coverage in paragraph "A," then plaintiff is entitled to an additional judgment for $100 per month from the expiration of the 12-month period above stated to the time of commencement of suit or the time of trial if the proofs so warrant, cf. R. R. 4:55–5, plus interest. Payments subsequent to the institution of suit are subject to the continuance of the disabling conditions.

(c) If, however, the court merely finds that plaintiff was disabled from performing one or more of the important duties of his occupation under paragraph "B" of the policy, then plaintiff is entitled to a judgment of $40 per month for three months following termination of total disability under either of the definitions of total disability in paragraphs (a) and (b) above. It should be noted that the defendant, in making total disability payments from the date of the accident until December 25, 1955, admitted at least total occupational disability to exist during that period.

The determination of the Appellate Division is reversed and the judgment of the Superior Court, Law Division, is set aside. The cause is remanded to the Superior Court, Law Division, for the taking of further testimony and new and complete factual findings based upon the original and new testimony leading to a judgment in conformity with the legal principles set forth in this opinion.

*For affirmance*—Justice HALL—1.

*For reversal and remand*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS and PROCTOR—5.