**B. N. BLAUSTEIN, Plaintiff,**

v.

**CONNECTICUT GENERAL LIFE IN-SURANCE COMPANY, a corporation, Defendant.**

**Civ. A. No. 2975-61.**

United States District Court
District of Columbia.

June 21, 1962.

Bernard H. Conn, Washington, D. C., for plaintiff.

James C. McKay, Edward J. Grenier, Jr., Covington & Burling, Washington, D. C., for defendant.

SIRICA, District Judge.

This is an action for a declaratory judgment brought under 28 U.S.C.A. §§ 2201 and 2202.

On August 1, 1960, plaintiff obtained a $7,500 life insurance policy from defendant through his participation in a group known as the National Office Furniture Association, Inc. The pertinent portion of the policy insofar as this action is concerned is as follows:

"CONTINUATION OF INSURANCE. If any employee while insured under the policy and prior to his 60th birthday, shall become *totally disabled from bodily injury or disease which wholly and continuously prevents such employee from engaging in any occupation or employment for wage or profit,* and if such total disability continues after the payment of premiums for such employee is discontinued by the Policyholder, then the Insurance Company will continue the insurance in force on such employee, without further payment of premiums, during the period he remains totally and continuously disabled but not exceeding one year from the date of termination of premium payment for such employee, unless due proof of such total disability is submitted as provided herein." (Emphasis supplied.)

It is conceded that plaintiff was an "employee" under the terms of the policy.

On August 6, 1960, plaintiff suffered a severe heart attack which resulted in a myocardial infarction. On that date he was 55 years of age. Following four weeks of hospitalization, on the advice of his attending physician, plaintiff sold his office equipment business and neither obtained nor sought further employment. In December 1960 defendant was informed that plaintiff had become totally disabled but after a thorough review of his claim, defendant notified plaintiff that he did not qualify for the benefits under the total disability section of his insurance contract. Shortly after the denial of his claim, plaintiff filed this complaint for a declaration of his rights under the contract.

The provision of the insurance policy set out above is termed a "non-occupational" or "general" disability clause since it insures against a disability which prevents the insured from engaging in *any* occupation or employment for financial gain.[1] "Occupational" policy provisions insure against a disability which prevents the insured from pursuing a particular occupation. Some courts have allowed recovery under a general disability clause when it has been demonstrated that the insured is unable to follow his regular employment, even though he could be gainfully employed in some other area of activity. Other courts have given a somewhat literal interpretation to this general disability clause. There is a clear majority of cases, however, which has rejected both constructions and has adopted what this Court consid-

---

1. For a collection of the myriad of cases dealing with this type of clause see the annotations at 149 A.L.R. 7–186 and 153 A.L.R. 430–442 (1944).

ers to be a reasonable rule. The Court adopts the rationale of this last group of judicial interpretations, there being no controlling authority on the precise question in the District of Columbia.

 "Total" disability does not mean that the insured must be utterly helpless or that he is able only to perform mild sedentary activities. Plaintiff was self-employed and prior to his attack performed supervisory and managerial functions as well as a considerable amount of manual labor. If after his heart attack he could only participate in very limited supervisory and managerial activities, he would be totally disabled. Dittmar v. Continental Cas. Co., 29 N.J. 532, 150 A.2d 666 (1959).

 It is equally unreasonable to require a policyholder to demonstrate that he is unable to engage in "any" occupation or employment before he can recover those benefits for which he has paid substantial premiums. Although life insurance contracts containing non-occupational waiver of premium clauses are less costly than policies with occupational clauses, this factor does not compel a literal construction of the former. The Court agrees with the long list of authorities which have embraced the well-reasoned language found in Mutual Life Ins. Co. of N. Y. v. Bryant, 296 Ky. 815, 823, 177 S.W.2d 588, 592, 153 A.L.R. 422 (1943):

> "In such contracts (nonoccupational) the insured should be required to show physical inability not only to follow his regular occupation but also any occupation for which he may be fitted by education, training and experience, which may yield a reasonably substantial gain or profit, rising to the dignity of an income or livelihood."

Thus, a person trained and experienced in a highly skilled trade or profession need not seek out work which is personally degrading and insubstantially remunerative. Likewise, no insured is required to engage in an occupation which would expose him to great pain or further endanger his health. Equitable Life Assur. Soc'y of United States v. Mac-Kirgan, 86 F.2d 271 (5th Cir. 1936); Walker v. Equitable Life Assur. Soc'y, 123 F.Supp. 306 (E.D.Ill.1954).

Bearing these principles in mind, it must be determined whether the facts presented demonstrate that plaintiff has sustained his burden of proof.

For over twenty-five years prior to his attack, plaintiff owned and operated a small office equipment business. As is generally the case in most small businesses, in addition to supervisory and managerial duties, it was necessary for plaintiff to perform extensive manual work such as moving machines about the premises, delivering equipment to prospective customers for demonstration purposes, and the like. His wife was the company bookkeeper, because plaintiff was not qualified to perform such duties himself.

In 1926, plaintiff graduated from the Maryland School of Law, but after a short and unsuccessful practice, he began selling small payment insurance policies from door to door. Since entering the office equipment business in 1931, plaintiff has neither practiced law nor sold insurance.

It has been necessary for plaintiff to visit his physician, Dr. Stanley Kirstein, on a monthly or semi-monthly basis continuously since his discharge from the hospital in 1960. If he exerts himself to a limited degree, such as in walking two or three blocks, pains usually develop in his chest, and there is a shortness of breath along with marked fatigue. Pain has occurred while plaintiff was at rest, but, generally, when any pains develop, nitroglycerin tablets provide relief. Fatigue and discomfort also are precipitated by cold, windy weather or extreme, hot weather and occur under conditions of emotional stress and strain. Persons with heart conditions such as plaintiff's have a low tolerance to excitement, so that unless they maintain a placid way of life and avoid great physical effort, they subject themselves to further attacks.

One doctor called by defendant attributed the pain which plaintiff suffers to an anxiety state rather than to a heart condition.[2] Defendant's other physician-witness and the physicians called by plaintiff were of the opinion that plaintiff should not exert himself to the point of chest discomfort nor do anything which could endanger himself or other persons. They agreed that he should not subject himself to severe weather conditions.

Defendant's witness also acknowledged that in walking to and from public transportation (which he advised) in pursuit of employment, plaintiff might have additional heart pain and require extra nitroglycerin tablets. Whenever pains occur plaintiff must take a tablet and be at rest until the pain subsides. He has been using ten to fifteen tablets per day while engaged in a life of forced tranquility, which includes an occasional short drive or walk and limited social activity.

Dr. Kirstein has been plaintiff's attending physician since the onset of his illness. It is his opinion that *this* patient should not attempt to hold a regular job since he would not be able to meet deadlines nor maintain specific hours; however, he testified that over 80% of his patients have been able to return to some employment. Dr. John A. Reisinger examined plaintiff on two occasions and concurred with Dr. Kirstein. He stated that if plaintiff were able to live without working, "he should avoid any occupation, other than some occupational therapy, to keep himself amused." The doctors testifying for defendant did not agree with this statement.

The Court concurs with the conclusions reached by plaintiff's physicians. It is obvious that plaintiff is unable to operate an office equipment business as he did before August 1960. His education, training and experience, other than in office equipment, was limited to practicing law for a short period of time and servicing a debit route for an industrial insurance company. Clearly, plaintiff would be unable to perform door to door sales. The strain and stress associated with the practice of law also could hardly be borne by one in plaintiff's condition, and since he has not practiced law for twenty-five to thirty years, it is unlikely that he would be of much value as a law clerk in a legal firm.

Not only is plaintiff unsuited for employment within the realm of his experience, but he is also unfit to perform services for any employer who demands punctuality or enforces regular hours. He must occasionally rest during the day and extra activity associated with a regular job would cause him additional pain.[3] The fact that plaintiff is financially able to sustain himself without working is not evidence which would support a conclusion contrary to that which the Court reaches. When one obtains employment out of the pressure of necessity, against the advice of his physician and at the risk of further bodily injury or great pain, he is disabled or prevented from engaging in any occupation under the terms of a general insurance policy clause.

The Court finds that plaintiff has proved by a preponderance of the evidence that he is totally disabled from bodily disease which wholly prevents him from engaging in his occupation and from any other regular employment for which he might be suited by education or experience.

Accordingly, plaintiff is entitled to all the privileges and benefits under the disability provision of his policy. This opinion will constitute the findings of fact and conclusions of law. Counsel will submit an appropriate order.

---

2. Dr. Benjamin Manchester testified that plaintiff suffers with "a regurgitant esophagitis," that is, he regurgitates hydrochloric acid from his stomach which continually irritates the lower end of his esophagus and produces symptoms which are indistinguishable from pains resulting from a coronary insufficiency.

3. Whether the pains are caused by plaintiff's heart or his stomach, they are pains nevertheless.