**Newell Edward RUDDER, Appellant,**

v.

**The OHIO STATE LIFE INSURANCE CO.,
a Corp., Appellee.**

Court of Appeals of Kentucky.

March 12, 1965.

Rehearing Denied May 14, 1965.

Joseph J. Leary, Frankfort, Harvey Parker, Jr., Jack R. Kibbey, Charles H. Riedinger, Vanceburg, for appellant.

Odis W. Bertelsman, Newport, Frank Warnock, Greenup, for appellee.

DAVIS, Commissioner.

The appellant brought this action asserting his entitlement to disability payments under one insurance policy plus waiver of premiums on two life insurance policies, all issued to him by the appellee company. It is appellant's contention that he is totally disabled within the meaning of the policies; appellee takes the contrary view. The jury found that appellant's total disability had ceased as of December 25, 1961; the company had counterclaimed, seeking recovery of certain sums previously paid appellant and premiums formerly waived, but the trial court directed a verdict against the company as to that phase of the case. There is no cross-appeal, so the question presented by appellee's counterclaim is not before us.

Appellant contends that he was entitled to a directed verdict; also asserted is appellant's claim that the trial court erred in permitting a witness to testify, since the witness's name had not been furnished appellant on discovery request.

The parties agree that the three policies were in full force when appellant was

severely injured in an automobile accident on March 25, 1957. For purposes of this discussion the disability provisions relating to waiver of premiums on the life policies and providing for payment under the disability policy may be considered the same. The pertinent provision in the disability contract recites: " * * * the company will continue the monthly indemnity * * * so long as 'such injuries' shall wholly and continuously disable and prevent the insured from engaging in any and every occupation or employment." The policy also provided for payments not exceeding twelve months if the injuries so disabled the insured as to prevent his performing any and every kind of duty pertaining to his occupation. It is recognized by the parties that the policy provisions dealing with disability to engage "in any and every occupation or employment"—as distinguished from the disability to perform his occupation—are applicable.

It is plain that appellant possessed boundless energy and a driving ambition prior to his injury. He had completed a high school education and a limited course at a "normal" school, following which he was employed for a brief time teaching school. Thereafter he served as a clerk and part-time manager of his father's general store. He undertook various enterprises, including farming (producing crops, dairying, livestock operations, etc.), a bottled gas business (which prospered in a phenomenal manner after he and a partner acquired it and devoted much effort to it), a motel (in which operation he often served as a "bellhop" by carrying in substantial quantities of luggage), a "Dairy Cheer" business—consisting of a roadside stand dispensing confections at retail—in which enterprise he labored many late hours. In addition to these activities, appellant engaged as a tobacco buyer on his own (sometimes referred to as "pinhooking"). This activity was strenuous and required arduous physical efforts, including climbing in tobacco barns to inspect crops, etc. Another substantial activity in which appellant engaged prior to the accident was the acquisition, shipping, handling and ultimate selling of cattle. In this phase of his work he traveled many miles, between Wisconsin and Kentucky, and over farms in Wisconsin locating cattle. In short, appellant was a hard-working individual with many separate types of businesses. In each of them, however, it was essential that he be robust in order to fulfill the exacting physical, mental and nervous strains upon him. Appellant testified, as did medical witnesses in his behalf, that he may no longer engage in any of these activities.

Appellant's back was injured in the automobile accident. Three hospital confinements, at short intervals just following the accident, failed to produce the desired recovery. Apparently appellant's condition and disability worsened, so that in November, 1957, surgery was performed on appellant's spine. A protruding intervertebral disc was removed and a spinal fusion attempted. The effort at fusion was not successful. Appellant spent twenty-one weeks in a cast, then some months in a wheelchair, from which status he improved sufficiently to get about with crutches and ultimately to his present condition, in which he uses a cane as a walking aid.

For the appellant, medical testimony reflected that the failure of the attempted spinal fusion has left a situation whereby there is "one raw edge of bone rubbing on another raw edge." This condition, according to appellant's evidence, is conducive to pain and disability. No improvement may be expected without another fusion effort, say doctors for appellant. Whether another fusion would succeed cannot be definitely foretold, although the medical witnesses agree that generally the chances for success in a second fusion effort are less than in the first attempt. It is observed that a second fusion attempt has been recommended by doctors for appellant, whereas the sole medical witness offered for appellee, Dr. Freiburg, testified that he would not recommend it "for the time being."

The medical evidence for appellant, coupled with appellant's own testimony as to his physical condition and the pain he encounters when he undertakes the mildest sorts of activities, is positive. In the absence of rebutting evidence of sufficient strength to reduce its persuasive force, it clearly requires a conclusion that appellant is "disabled" within the policy provision. It remains to examine the evidence proffered by appellee to determine whether its quality of probative value is such as to make a jury issue as to "disability."

As noted, the only medical evidence presented for appellee was the testimony of Dr. Freiburg, an eminent orthopedic surgeon. Dr. Freiburg examined appellant once. Based upon his clinical findings, Dr. Freiburg responded to a question from appellee's counsel that appellant is not so disabled as to prevent his following any occupation for which he may be fitted by education, training and experience. However, upon cross-examination, Dr. Freiburg significantly qualified his answer by conceding that appellant "might" be able to walk on plowed ground, or he "might" be able to ride a tractor, or he "might" be able to drive a car—and with apparent equanimity—that he "might not" be able to do any of these things. As to whether appellant could renew one of his former activities (helping to load liquified petroleum cylinders on a truck) Dr. Freiburg responded: "I think he might be able to do it, and I think it might hurt, and it might not hurt." At a later point in his evidence the doctor made this additional comment about the cylinder task: "I think probably it would bother him a great deal if he would." As to whether appellant could mount the ladder of a silo and pitch ensilage down to cattle, it was the opinion of Dr. Freiburg that, "He might be able to—and again he might not." In summary, Dr. Freiburg's testimony was so equivocal as to be virtually useless.

The witness Opal Brown is the wife of a former tenant on appellant's farm. She also served as a practical nurse during the terminal illness of appellant's wife. She said that every morning the appellant came to her home and told her husband to do "whatever he wanted done" on the farm. This entailed appellant's travel from his residence across the road. On some occasions she saw appellant drive a Cadillac and at other times he drove a Jeep. On a "couple" of occasions she said that appellant got on a tractor and hauled some water so that it could be put into a tobacco setter. Two or three times, she said, she saw appellant ride a horse; he was able to mount and dismount the horse without assistance. Sometimes appellant would walk behind the tractor, watching the setting of tobacco; he would do this "for two or three rows."

In response to the testimony of Mrs. Brown, appellant stated that he had acquired a Jeep, which he had especially fitted with bucket seats; he did this, he explained, in hope that he could find a means whereby he could drive himself about without too much suffering, but abandoned the Jeep when it failed to accomplish the intended purposes.

■ The litigants are in accord that Mutual Life Ins. Co. of New York v. Bryant, 296 Ky. 815, 177 S.W.2d 588, 153 A. L.R. 422, placed this jurisdiction with the majority in cases of this type. The rule as stated in the opinion just cited is: "In such contracts (nonoccupational) the insured should be required to show physical inability not only to follow his regular occupation but also any occupation for which he may be fitted by education, training and experience, which may yield a reasonably substantial gain or profit, rising to the dignity of an income or livelihood." ibid., 177 S.W.2d at p. 592.

The opinion in the Bryant case, supra, specifically recognizes the proposition that the insured is not to be deemed "able" merely because it is shown that he could perform some trivial task, such as selling peanuts or shoestrings. The rule as just quoted requires that the insured be fitted

to engage in an occupation which may "yield a reasonably substantial gain or profit, rising to the dignity of an income or livelihood."

Recapitulating the evidence, we observe that every activity for which appellant is fitted, by education, training and experience requires strenuous physical activity. For appellant the evidence is clear and positive that he is disabled from performing all or any of the functions of the types of employment for which he is trained and experienced. Opposed to this is set the equivocal evidence that he "might or might not" do some parts of the labors required; that he "might be able to do it and I think it might hurt, and it might not hurt"—and that to do so "probably * * * would bother him a great deal if he would."

The evidence of Mrs. Brown deals with isolated instances reflecting that appellant did perform a few relatively minor tasks incident to the operation of his farm. We think it beyond dispute that the evidence of Mrs. Brown fails to reflect that appellant could ever earn a living as a farmhand. Could it be said that he might obtain employment as a farm manager? We think not. It is true that as the owner of a farm (a capital asset which should play no part in the consideration of this question) he did show some interest, and on occasions made suggestions to the tenant as to the daily work. But if he owned no farm himself, is the quantum of proof such that an inference could be drawn that he could obtain gainful employment as manager of some other farm? The evidence for appellee falls far short of supporting such an inference.

Our cases consistently recognize the sound principle that it is improper to submit an issue to the jury so that it may make a determination of the issue by speculation or conjecture. Myers v. Walker, Ky., 322 S.W.2d 109; 18 Ky.Digest, Trial, ☞139(1) k. Evidence which does no more than suggest that appellant "might" or "might not" be able to do acts required in the occupations for which he is qualified must be characterized as speculative and conjectural. Under the factual circumstances here presented, it is our view that there was no evidence of probative value to reduce the conclusive force and effect of the appellant's evidence so that a verdict for the appellant-plaintiff should have been directed. Cf. Kentucky Transport Corp. v. Spurlock, Ky., 354 S.W.2d 509, and cases there cited. Accordingly, it was error to deny the appellant's motion for directed verdict and his motion for judgment n. o. v.

This view of the case makes it unnecessary to decide whether it was proper to permit the witness Opal Brown to testify.

The judgment is reversed for proceedings consistent with this opinion.